**IN RE: DEEPWATER HORIZON LITIGATION**
**MDL NO. 2179**

JAMES PARKERSON ROY
Domengeaux Wright Roy & Edwards, LLC
556 Jefferson Street, Suite 500
Lafayette, LA  70501
E-Mail: jimr@wrightroy.com
Telephone: (337) 233-3033
Fax:  (337) 233-2796

STEPHEN J. HERMAN
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA  70113
E-Mail: sherman@hhklawfirm.com
Telephone: (504) 581-4892
Fax: (504) 561-6024

January 8, 2014

The Honorable Judges of the U.S. Fifth Circuit Court of Appeals
600 South Maestri Place
New Orleans, Louisiana  70130

      Re:  In re: DEEPWATER HORIZON
           Business Economic Loss Framework Appeal
           **U.S. Fifth Cir. No. 13-30315**

May It Please the Court:

      The Business Economic Loss Claimants and the Economic & Property Damages Settlement Class respectfully submit this letter brief in response to the Court's Order of January 2, 2014.[1]

      Before turning to the legal applicability of the doctrine of judicial estoppel or waiver on the issue of causation, Plaintiffs-Appellees respectfully note that the current interpretation and application of the terms of the Economic & Property Damages Settlement Agreement are supported under a number of additional grounds.

      With BP's express concurrence, the Claims Administrator issued a Policy Interpretation on October 10, 2012, confirming the clear and express language of the Settlement Agreement:

> The Settlement Agreement sets out specific criteria that must be satisfied in order for a claimant to establish causation.  Once causation is established, the Settlement Agreement further provides specific formulae by which compensation is to be measured. . . . The Settlement Agreement does not contemplate that the Claims Administrator will undertake additional analysis of causation issues beyond those criteria that are specifically set out in the Settlement Agreement.  Both Class Counsel and BP have in response to the Claims Administrator's inquiry confirmed that this is in fact a correct statement of their intent and of the terms of the

---

[1] Doc. 00512487129.

Settlement Agreement. The Claims Administrator will thus compensate eligible Business Economic Loss and Individual Economic Loss claimants for all losses payable under the terms of the Economic Loss frameworks in the Settlement Agreement, without regard to whether such losses resulted or may have resulted from a cause other than the Deepwater Horizon oil spill provided such claimants have satisfied the specific causation requirements set out in the Settlement Agreement.[2]

BP has never appealed this Policy Interpretation to the District Court, much less this Honorable Court. Indeed, BP's Counsel specifically acknowledged during oral argument before this Panel on July 8, 2013 that such issue was *not* before the Court in Appeal No. 13-30315.[3]

As a substantive matter, moreover, this Policy Interpretation is supported by the clear and unambiguous language of the Settlement Agreement.

The Policy Interpretation is supported by the entire body of parol evidence on the subject.

Exhibit 4B requires Class Members to establish an alleged loss traceable to the *Deepwater Horizon* Incident by objective and agreed-to standards, and is therefore consistent with both Article III and Rule 23.

Significantly, BP has never articulated a definition, standard or test for determining whether an alleged injury is traceable to the *Deepwater Horizon* Incident other than the objective test that is set forth in Exhibit 4B.

While BP seems to now take the position that the Class Definition imposes some type of separate and additional test for causation, it is significant to note that BP did *not* – either in responding to the Claims Administrator's inquiry in September 2012, in response to the formal Policy Interpretation issued in October of 2012, or when the Parties appeared before the District Court in December of 2012 – ever suggest that there was some *additional,* undefined, unspecified, and presumably subjective "causal nexus" requirement for Class Definition purposes.

Nevertheless, and in any event, Class Counsel's interpretation of the Class Definition is supported not only by the District Court's findings, but by: (i) the clear and express language in the Settlement Agreement; (ii) the entire body of parol evidence on the subject; and (iii) both Article III and Rule 23.[4]

---

[2] *See* Doc. 8963-71.

[3] *See* Doc. 11826-2.

[4] The imposition of an undefined and subjective causation requirement would be inconsistent with the desirability under Rule 23 for an objectively ascertainable class. *See, e.g.,* MILLER DECLARATION [Doc 7114-16], p.6, ¶13 (the Class Definition "clearly and objectively defines the class in terms of time period, geographic region, and type of claim"); COFFEE DECLARATION [Doc 7110-3], p.13, ¶19 (the Class Definition leads to "a list of easily identifiable categories of … entities who are permitted to show objective losses from that disaster"); JOINT PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL APPROVAL [Doc 7945], at p.87, ¶¶321-322 (the Class Definition "is objective, precise, and detailed, and does not turn on the merits …. Nothing in the class definition requires a

It is only at this point that the issue of judicial estoppel comes into play.

To the extent that BP might now attempt to urge the Court to impose an additional undefined causation requirement, it should be estopped from attempting to change its position.

For the reasons outlined in the District Court's Order of December 24, 2013, and for the reasons stated below, the District Court's holding on judicial estoppel was not an abuse of discretion and should therefore not be disturbed. *See Reed v City of Arlington*, 650 F. 3d 571, 574 (5th Circ. 2011) (en banc) (abuse of discretion review applies to application of judicial estoppel).

"Judicial estoppel is an equitable doctrine that prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." *In re Paige*, 610 F.3d 865, 876 (5th Cir. 2010) (internal quotations omitted); *see also New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him" (internal quotation omitted)). Writing for this Court in *In re Superior Crewboats, Inc.*, Judge Jones explained that the "purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." 374 F.3d 330, 334 (5th Cir. 2004) (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999)). Judge Posner has similarly rooted the doctrine in the integrity of the courts, explaining that "the purpose of the doctrine . . . is to reduce fraud in the legal process by forcing a modicum of consistency on a repeating litigant." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660 (7th Cir. 2004) (quoting *Ladd v. ITT Corp.*, 148 F.3d 753, 756 (7th Cir. 1998)).

In this Circuit, judicial estoppel requires three findings: (1) the party's position is clearly inconsistent with its previous one; (2) the court accepted the previous position; and (3) the change in position was not inadvertent. *In re Paige*, 610 F.3d at 876. The district court found, as a matter of fact, that each of these requirements was met.

Courts apply judicial estoppel to pure fact representations, *see New Hampshire*, 532 U.S. 742; *In re Superior Crewboats*, 374 F.3d at 334-35, those that constitute mixed questions of fact and law, *Patriot Cinemas, Inc. v. Gen. Cinema Corp.*, 834 F.2d 208, 214 (1st Cir. 1987); *Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 783 (3d Cir. 2001), or to pure questions of law, *In re Cassidy*, 892 F.2d 637, 641-42 (7th Cir. 1990); *Helfand v. Gerson*, 105 F.3d 530, 535 (9th Cir. 1997). Indeed, as the Ninth Circuit has explained, "judicial estoppel applies to a party's stated position, regardless of whether it is an expression of intention, a statement of fact, or a legal assertion." *Helfand*, 105 F.3d at 535.

---

determination on the merits or delves into any person's subjective mental state. The definition is based on objective criteria such as where … an entity owned, operated, or leased a physical facility, or employed full time workers").

Judicial estoppel is particularly applicable where a litigant attempts to contradict the factual record that he himself previously constructed. Thus, in *New Hampshire v. Maine*, the Supreme Court ruled that the state of New Hampshire was judicially estopped from defining a shared boundary in a way that was contradictory to the boundary definition adopted by the state in a similar dispute thirty years prior. 532 U.S. at 748-49. In other cases, municipalities have been estopped from denying employee misconduct that they earlier acknowledged, *Czajkowski v. City of Chicago*, 810 F. Supp. 1428 (N.D. Ill. 1992), and businessmen have been estopped from claiming individual ownership of patent rights when they earlier submitted evidence demonstrating that those rights were owned by a corporate entity, *Intellivision v. Microsoft Corp.*, 784 F. Supp. 2d 356, 362-63 (S.D.N.Y. 2011). Further, judicial estoppel is routinely invoked in bankruptcy proceedings where a debtor manipulates the evidentiary record to conceal a potential tort claim, only to later sue seeking damages for that claim. *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002) (estopping discrimination claim where plaintiff failed to disclose claim in prior bankruptcy proceeding); *Tokheim v. Georgia-Pacific Gypsum LLC*, F. Supp. 2d 988 (N.D. Iowa 2009) (plaintiff estopped from bringing sexual harassment and sex discrimination claims against former employer where she failed to disclose these claims in prior bankruptcy filing); *Acuna v. Connecticut Gen. Life Ins. Co.*, 560 F. Supp. 2d 548 (E.D. Tex. 2008) (insured was judicially estopped from pursuing ERISA claims that were not disclosed in prior bankruptcy filing).

These cases share a common theme: application of judicial estoppel to preclude a litigant from playing fast and loose with the evidentiary record. Similarly, the district court in this case properly invoked judicial estoppel to prevent BP from disclaiming its earlier fact representations in order to garner unfair advantage and manipulate the court. BP submitted into the record unrebutted expert testimony which tied causation for both Class Definition and BEL Framework purposes to the objective, clearly defined framework of Exhibit 4B. Its counsel stated in open court that the terms of the Settlement Agreement solely and exclusively governed causation. And when objectors complained about the ways in which the geographic boundaries and/or causation tests differentiated them from other claimants, BP's experts explained that the boundaries and causation tests reflected reasonable expectations about the economic harm likely resulting from the Spill. Critically, the district court relied upon these evidentiary representations to find that the class members had colorable, objectively defined claims due to the spill, and that the requirements of Rule 23 were satisfied.[5] The court's reliance on BP's prior representations counsels in favor of judicial estoppel.

What is more, BP has reaped significant benefit from its representations to the district court. As a result of the settlement, it will obtain a classwide release stretching from East Texas

---

[5] BP submitted sweeping factual and legal representations to the District Court in *BP Defendants and Plaintiffs' Joint Proposed Findings of Fact and Conclusions of Law*. [Rec. Doc. 7945] This 213 page pleading contains 732 paragraphs of background, procedural history, evidentiary support, and interpretative analysis of the Settlement Agreement and is signed by *both parties*. It is the central document (other than the Settlement Agreement itself) that explicitly discusses "the intent of the parties" through negotiation and lays bear how BEL causation and class membership are intertwined. Rarely in a dispute concerning the interpretation of a Settlement Agreement does such a joint filing memorializing the parties' intent and understanding ever exist.

to the Florida Panhandle, and from south Louisiana to north Mississippi. This geographic region encompasses tens of thousands of businesses and individuals, many of whom did not opt out of the settlement because they understood the causation requirements to be wholly contained within the objective standards set forth by the Settlement Agreement in Exhibit 4B—exactly as BP's experts had testified. To now subject any of these businesses or individuals to some amorphous, as-yet-undefined causal-nexus test is patently unfair. It is, as Judge Jones might say, an attempt to "have their cake and eat it too." *In re Superior Crewboats*, 374 F.3d at 333.

This point bears special scrutiny in the class action context. BP has benefitted enormously from the large geographic zones created under the Settlement Agreement. Those zones will provide BP will significant global peace if and when the settlement becomes effective. BP, of course, desires this peace, but now—after the opt out period has passed—it seeks to impose onerous causation tests on the class that it never before raised.

In *Carnegie, supra*, the Seventh Circuit held that defendants were judicially estopped from arguing that a litigation class did not meet Rule 23 requirements when the same defendants had earlier supported certification of a similar settlement class and had represented to the district court that all Rule 23 requirements were satisfied. *Carnegie*, 376 F.3d at 660. Judge Posner, writing for the court, was concerned that defendants had reaped significant advantages by initially supporting the class; they had, for example, used the certification order to enjoin related actions in other courts. *Id.* Judge Posner explained, "[t]he antifraud policy that animates the doctrine [of judicial estoppel] is fully engaged when a party obtains a judgment on a ground that it later repudiates. . . ." *Id.*

This statement applies precisely to BP's conduct herein; it has obtained a judgment based on a series of factual representations that it now wishes to repudiate. The District Court did not abuse its discretion in estopping BP from its attempted repudiation. Nor should this Court allow BP to do the same. The District Court correctly applied the doctrine of judicial estoppel and appellees respectfully request that the lower court judgment be preserved.

## Conclusion

For the above and foregoing reasons, based on the evidence in the record, for the reasons stated by the District Court, and for the reasons stated in the Plaintiff-Appellees' Opposition Brief, BP's Renewed Motion for Injunction should be denied and the existing interpretation and application of the terms of the Economic & Property Damages Settlement Agreement should be affirmed.

Respectfully submitted,

James Parkerson Roy
Stephen J. Herman
*Co-Lead Class Counsel*

Samuel Issacharoff
*Lead Appeal Counsel for the Class*