# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Theodore B. Olson
Direct: +1 202.955.8668
Fax: +1 202.530.9575
TOlson@gibsondunn.com

January 8, 2014


**VIA CM/ECF**

Mr. Lyle W. Cayce, Clerk
U.S. Court of Appeals for the Fifth Circuit
F. Edward Hebert Building
600 South Maestri Place
New Orleans, LA  70130

Re:      *In re: Deepwater Horizon*, No. 13-30315

Dear Mr. Cayce:

BP Exploration & Production Inc., BP America Production Company, and BP p.l.c. (collectively, "BP") respectfully submit this letter brief in response to this Court's January 2, 2014 order directing the parties to "file simultaneous letter briefs addressing the legal applicability/non-applicability of judicial estoppel/waiver on causation issues by January 8, 2014."  Order at 4, Doc. 00512487129 (Jan. 2, 2014).

As BP explained in its Renewed Motion for an Injunction (Doc. 00512484163 at 32-45) and discusses in greater detail below, neither judicial estoppel nor waiver may be applied to prevent or restrict BP from seeking to enforce the settlement agreement's causal-nexus requirement for class membership.  First, the causal-nexus requirement directly involves the federal courts' authority under Article III, the limits imposed by the Rules Enabling Act, and compliance with Federal Rule of Civil Procedure 23—issues that are not subject to judicial estoppel or waiver.  Just as the parties cannot agree to confer standing or to waive the requirements of Rule 23, the district court cannot bypass its duty to adhere to its constitutional and statutory obligations in considering whether to adopt BP's saving construction of the settlement agreement.

Second, and in any event, BP has consistently adhered to the causal-nexus requirement for class membership, and thus its statements do not satisfy any of the three stringent criteria for judicial estoppel.

Third, and independently, the district court could not have properly applied judicial estoppel here because doing so violated the mandate rule by disregarding both the letter and spirit of this Court's October 2 judgment and December 2 order.  In light of the law regarding estoppel and waiver, this Court's prior judgment and order, and the plain text of

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 2

the settlement agreement, this Court should hold that the settlement agreement imposes a threshold causal-nexus requirement for class membership and should direct the district court to enforce that requirement.

I.      **The Causal-Nexus Requirement Directly Involves Article III Standing, The Limits Imposed By The Rules Enabling Act, And Compliance With Rule 23— None Of Which Is Subject To Judicial Estoppel Or Waiver.**

Article III, the Rules Enabling Act, and Federal Rule of Civil Procedure 23 impose requirements that cannot be waived or ignored; they are not subject to estoppel. This Court and the district court are therefore obligated to ensure that those requirements are satisfied. BP outlined these principles in renewing its request for an injunction. *See* Renewed Motion of Defendants-Appellants for an Injunction ("Renewed Motion") at 33-34, Doc. 00512484163 (Dec. 30, 2013). BP also explained that the district court was required to adopt BP's reasonable interpretation of the settlement agreement so that the settlement would not violate Article III, the Rules Enabling Act, or Rule 23. *See id.* at 34-35. In light of this Court's January 2 order, BP elaborates on these points below.

A.      **BP Cannot Waive Or Be Estopped From Contesting Misinterpretations Of The Settlement Agreement That Would (If Not Corrected) Cause The Agreement To Violate Article III, The Rules Enabling Act, Or Rule 23.**

As a matter of law, parties (and federal courts) cannot waive the requirements of Article III, the Rules Enabling Act, or Rule 23. The district court erred in holding otherwise. Although couched in terms of judicial estoppel, the district court essentially concluded that BP adopted Class Counsel's current interpretation of the settlement agreement, D.E. 12055 at 19, and that Class Counsel and BP have therefore agreed to: confer standing upon those lacking it; violate the Rules Enabling Act by creating substantive rights of recovery where none existed before; and waive the requirements of Rule 23 by *sub silentio* including in the class those with no injury traceable to the oil spill. As shown in Part II below, no such agreement occurred; but if it had, such an attempt to evade the requirements of Article III, the Rules Enabling Act, and Rule 23 would be invalid and unenforceable, and the federal courts would have an independent duty to reject such an attempt and instead construe the court-supervised settlement agreement in a manner that satisfies the requirements of federal law.

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 3

1.   **The Standing Requirements Of Article III—And The Limits Imposed By The Rules Enabling Act—Cannot Be Overcome By Judicial Estoppel Or Waiver.**

BP cannot waive or be estopped from challenging Article III jurisdictional defects in the settlement agreement—such as those that arise because of the district court's refusal to enforce a meaningful causal-nexus requirement for class membership. Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh* v. *Y&H Corp.*, 546 U.S. 500, 514 (2006). Moreover, "no action of the parties can confer subject-matter jurisdiction upon a federal court." *Ins. Corp. of Ireland, Ltd.* v. *Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982); *see Gasch* v. *Hartford Accident & Indem. Co.*, 491 F.3d 278, 284 (5th Cir. 2007) (emphasizing that "subject matter jurisdiction 'cannot be conferred by consent, agreement, or other conduct of the parties'" (quoting *In re Tex. Consumer Fin. Corp.*, 480 F.2d 1261, 1266 (5th Cir. 1973))). Simply put, "principles of estoppel do not apply" to questions of federal court subject matter jurisdiction. *Compagnie des Bauxites*, 456 U.S. at 702 (internal citation omitted); *see In re Sw. Bell Tel. Co.*, 535 F.2d 859, 861 (5th Cir. 1976) ("Judicial estoppel principles cannot conclusively establish jurisdictional facts."), *modified*, 542 F.2d 297 (5th Cir. 1976) (en banc) (per curiam), *rev'd on other grounds sub nom. Gravitt* v. *Sw. Bell Tel. Co.*, 430 U.S. 723 (1977); *Lara* v. *Trominski*, 216 F.3d 487, 495 n.9 (5th Cir. 2000) (refusing to apply judicial estoppel to question of subject matter jurisdiction); *Amco Constr. Co.* v. *Miss. State Bldg. Comm'n*, 602 F.2d 730, 733 (5th Cir. 1979) ("Notions of waiver and estoppel cannot confer on a court of the United States the jurisdiction to decide a claim."); *cf. Maiz* v. *Virani*, 311 F.3d 334, 339 (5th Cir. 2002) (rejecting application of judicial estoppel to question of appellate standing).

This Court's case law accords with that of other circuits. In *Gray* v. *City of Valley Park, Missouri*, for example, the Eighth Circuit held that it was required to assure itself that a party had Article III standing, even though that party had changed positions on whether it possessed standing. 567 F.3d 976, 982 (8th Cir. 2009). In doing so, the court emphasized that it had "failed to find any precedent . . . supporting the application of [the judicial estoppel] doctrine in the face of an alleged jurisdictional default." *Id.* Similarly, in *Wight* v. *BankAmerica Corp.*, the Second Circuit held that "irrespective of how the parties conduct their case, the courts have an independent obligation to ensure that federal jurisdiction is not extended beyond its proper limits." 219 F.3d 79, 90 (2d Cir. 2000). The Second Circuit emphasized that, "[a]s an equitable doctrine, judicial estoppel does not rest easily with the concept of standing, which in both its constitutional and prudential dimensions, is a prerequisite to federal subject matter jurisdiction." *Id.* at 89. Many other decisions similarly recognize that judicial estoppel and waiver cannot bar a party from challenging subject matter jurisdiction. *See, e.g.*, *Owen Equip. & Erection Co.* v. *Kroger*, 437 U.S. 365, 377

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 4

n.21 (1978) ("Federal judicial power does not depend upon 'prior action or consent of the parties.'" (quoting *Am. Fire & Cas. Co.* v. *Finn*, 341 U.S. 6, 17-18 (1951))); *Hansen* v. *Harper Excavating, Inc.*, 641 F.3d 1216, 1227-28 (10th Cir. 2011) (holding that "we cannot . . . allow judicial estoppel to substitute for subject-matter jurisdiction"); *Int'l Union of Operating Eng'rs* v. *Cnty. of Plumas,* 559 F.3d 1041, 1044 (9th Cir. 2009) ("[E]ven though the County asserted subject matter jurisdiction in its removal notice, it is not precluded from challenging subject matter jurisdiction on appeal.").

Thus, it would not matter even if the criteria for estoppel or waiver had been satisfied here, because the district court had an obligation to assure itself that it possessed subject matter jurisdiction by (among other things) making sure that the settlement agreement—as interpreted—complied with the requirements of Article III. *Arbaugh*, 546 U.S. at 514. Had the district court properly evaluated this issue, it would have concluded that a failure to enforce a robust causal-nexus requirement for class membership results in the settlement class including many claimants who have suffered no injury traceable to the spill, and thus lack Article III standing. *See In re Deepwater Horizon*, 732 F.3d 326, 342 (5th Cir. 2013) (opinion of Clement, J.); *id.* at 346-47 (Southwick, J., concurring) (agreeing that Judge Clement's analysis was "logical"); *see also* Emergency Motion of Defendants-Appellants to Enforce this Court's October 2 Judgment and for an Injunction ("Emergency Motion") at 31-33, Doc. 00512449474 (Nov. 21, 2013) (explaining the constitutional defect that arises when the causal-nexus requirement is read out of the settlement agreement). This Court should avoid those problems by holding that the causal-nexus requirement for class membership must be enforced.

Doing so would also avoid violating the Rules Enabling Act, as this Court also has recognized. *See Deepwater Horizon*, 732 F.3d at 341 (opinion of Clement, J.). The Supreme Court has made clear that "Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedures 'shall not abridge, enlarge or modify any substantive right.'" *Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 613 (1997) (quoting 28 U.S.C. § 2072(b)). "By including claimants in the class definition that lack colorable claims, a court disregards this warning. It ignores the standing requirement of Article III and creates a substantive right where none existed before." *Deepwater Horizon*, 732 F.3d at 341 (opinion of Clement, J.).

The record in this case reflects precisely such an improper enlargement of substantive rights where none existed before. By refusing to enforce a robust causal-nexus requirement, the district court has allowed more than half a billion dollars in wrongfully paid awards to those lacking a causal nexus to the spill. *See* Renewed Motion at 45-47. Moreover, the number of new claims for alleged losses with no traceable connection to the spill continues to grow weekly. This manufacture of substantive rights, in violation of Article III and the

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 5

Rules Enabling Act, will be exacerbated if the district court's misinterpretation of the agreement is allowed to stand, as Class Counsel continues to solicit claimants with losses having nothing to do with the spill.

> ### 2. The Requirements Of Rule 23 Cannot Be Satisfied By Judicial Estoppel Or Waiver.

This Court also has an independent duty to ensure—notwithstanding any statements of the parties—that the settlement agreement complies with Rule 23. "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc.* v. *Dukes*, 131 S. Ct. 2541, 2551 (2011). Thus, "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," and a class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of Sw.* v. *Falcon*, 457 U.S. 147, 160, 161 (1982); *see also Castano* v. *Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996) ("A district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class."). This Court has accordingly emphasized the independent judicial "duty under Rule 23 to protect absent class members and to police class action proceedings." *Strong* v. *BellSouth Telecomms., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998). Just as subject matter jurisdiction cannot be manufactured through a party's actions, the requirements for Rule 23 certification cannot be bypassed by applying waiver or estoppel. *Cf. id.* Rather, "[t]he trial court has an independent obligation to decide whether an action was properly brought as a class action, even where neither party moves for a ruling on class certification." *McGowan* v. *Faulkner Concrete Pipe Co.*, 659 F.2d 554, 559 (5th Cir. 1981). Because of this independent obligation, challenges to class certification based on compliance with Rule 23 cannot be waived or judicially estopped. *Cf. Zedner* v. *United States*, 547 U.S. 489, 505 (2006) (holding that a party's mistaken agreement to waive statutory guarantees "does not provide a ground for estoppel").[1]

---

[1]    Alone among the circuits, the Seventh Circuit suggested nearly a decade ago that judicial estoppel might apply to Rule 23 certification questions. *See Carnegie* v. *Household Int'l, Inc.*, 376 F.3d 656, 659-60 (7th Cir. 2004). To the extent *Carnegie* did so, it conflicts with the overwhelming weight of appellate authority. Indeed, *Carnegie* does not cite any case applying judicial estoppel to class certification, and it fails to address the substantial constitutional concerns that would arise from such an application of estoppel. In any event, *Carnegie* involved a materially different procedural posture and thus has no bearing on this case. In *Carnegie*, defendants initially supported the approval of a *settlement class* (consisting of 17 million potential class members), but that settlement was then reversed by the appellate court. *Id.* Once it became apparent that the action

[Footnote continued on next page]

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 6

Indeed, this Court has already recognized these principles in this very case. In keeping with this Court's case law, in the October 2 decision Judge Clement recognized that a party's assent does not render a class compliant with Rule 23: "It makes no difference that a defendant may bargain for global peace by agreeing to allow claimants with no colorable legal claim to recover from the settlement fund." *Deepwater Horizon*, 732 F.3d at 343 (opinion of Clement, J.). As Judge Clement explained, "[a] class settlement is not a private agreement between the parties. It is a creature of Rule 23, which authorizes its use to resolve the legal claims of a class 'only with the court's approval.'" *Id.* (quoting Fed. R. Civ. P. 23(e)). While deferring resolution of the matter, Judge Southwick also recognized the potential Rule 23 problems with the district court's interpretation of the settlement, and agreed that "class actions are not meant to be vessels for achieving 'global peace' by creating substantive rights that would not otherwise exist." *Id.* at 347 (Southwick, J., concurring).

The district court was required to ensure that the settlement agreement complied with Rule 23. Had it properly evaluated this issue, it would have concluded that a failure to enforce a robust causal-nexus requirement for class membership violates the adequacy, commonality, predominance, typicality, fairness, and class notice requirements of Rule 23. *See* Renewed Motion at 16-28. Consistent with Rule 23, this Court should avoid those problems by holding that the settlement agreement's causal-nexus requirement must be enforced.

---

[Footnote continued from previous page]

would move forward as a *litigation class*, the defendants sought to challenge the manageability of the class. *Id.* The court noted that "defendants had urged the district court to accept the giant class as appropriate for a global settlement, had prevailed in their urging, and so are now precluded by the doctrine of judicial estoppel from challenging its adequacy, *at least as a settlement class* (the significance of this qualification will appear in due course)." *Id.* (emphasis added; internal citation omitted). The court, however, acknowledged the defendants' argument that "a class might be suitable for settlement but not for litigation," suggesting that the defendants' position as to the manageability of the litigation class *was not barred* by judicial estoppel. *Id.* at 660 (emphasis added). The court ultimately rejected defendants' challenge to the manageability of the litigation class not based on judicial estoppel, but simply because defendants had advanced no meaningful argument as to manageability. *See id.* at 661.

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 7

> **B.      BP Cannot Be Estopped From Advancing A Saving Construction In Order To Defend The Settlement Agreement And Avoid Otherwise Incurable Constitutional And Statutory Defects.**

Judicial estoppel and waiver also cannot prevent BP from advancing a saving construction in order to defend the settlement agreement. Indeed, the settlement agreement *requires* BP to defend the settlement and thus to advance a saving construction where possible. *See* Agreement § 17.1 (ROA.13-30315.4147). In rejecting BP's saving construction of the agreement, the district court elevated the discretionary doctrine of judicial estoppel over substantial Article III and federal law concerns and ignored the commands of the avoidance doctrine.

Principles of avoidance required the district court—and now this Court—to accept BP's saving construction of the agreement even if the traditional criteria for applying waiver or estoppel were satisfied. The Supreme Court has emphasized that courts must reject an interpretation that "would give rise to substantial constitutional questions," and are instead "obligated to construe the statute to avoid such problems." *INS* v. *St. Cyr*, 533 U.S. 289, 300 (2001); *see Hersh* v. *U.S. ex rel. Mukasey*, 553 F.3d 743, 753-54 (5th Cir. 2008) (applying "cardinal principal" of avoidance to reject interpretation that "would raise serious constitutional problems"); *see also In re U.S. for Historical Cell Site Data*, 724 F.3d 600, 617 (5th Cir. 2013) (Dennis, J., dissenting) (noting that because an interpretation gives rise to a "substantial constitutional question," the canon of avoidance requires a "fairly possible" alternative interpretation). That obligation applies also to the interpretation of contractual provisions, including settlement agreements. *See, e.g., UAW* v. *Gen. Motors Corp.*, 497 F.3d 615, 635 (6th Cir. 2007); *Nat'l Audubon Soc'y* v. *Watt*, 678 F.2d 299, 301 (D.C. Cir. 1982). Moreover, the principle of avoidance applies to substantial questions of federal law, including the proper interpretation and application of Rule 23. *See, e.g., Eccles* v. *Peoples Bank of Lakewood Vill., Cal.*, 333 U.S. 426, 432 (1948). Even if BP's earlier statements were inconsistent with its present interpretation of the settlement agreement—and they are not, *see* Renewed Motion at 35-45; *infra* Part II—this Court should adopt an interpretation of the agreement that avoids the serious constitutional and federal law problems raised by the refusal to enforce a meaningful causal-nexus requirement.

The doctrine of judicial estoppel must give way in light of these principles of avoidance. "[J]udicial estoppel is an equitable doctrine," and the decision whether to invoke it is discretionary. *See In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999). It therefore cannot "compel" a court to reach a result which would raise substantial constitutional and statutory concerns. Moreover, equity would not be served because estopping BP's correct interpretation of the settlement "could imperil a final approval of the settlement," *Deepwater Horizon*, 732 F.3d at 344, to the great detriment of numerous

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 8

legitimate claimants who have no stake in Class Counsel's efforts to salvage windfall payments to claimants with no causal nexus to the spill. *See Montrose Med. Grp. Participating Sav. Plan* v. *Bulger*, 243 F.3d 773, 786 (3d Cir. 2001) ("[I]t is difficult to see how equity would be served by punishing fifty-three other plan participants [who made no inconsistent statements] in return."). The doctrine cannot be applied here.

II.     **BP Has Consistently Defended The Causal-Nexus Requirement For Class Membership And The Statements Identified By The District Court Do Not Satisfy The Rigorous Prerequisites For Applying Judicial Estoppel.**

Judicial estoppel also does not apply here because none of the criteria for applying the doctrine has been satisfied. The doctrine cannot be applied unless: "(1) the party against whom judicial estoppel is sought has asserted a legal position that is 'plainly inconsistent' with a position asserted in a prior case; (2) the court in the prior case accepted that party's original position, thus creating the perception that one or both courts were misled; and (3) the party to be estopped has not acted inadvertently." *In re Oparaji*, 698 F.3d 231, 235 (5th Cir. 2012). BP has not changed its position, did not persuade the court to accept any prior inconsistent position, and certainly did not deliberately (or otherwise) mislead the court.

Indeed, BP has already shown that the criteria for applying judicial estoppel are not satisfied here. *See* Renewed Motion at 35-45; Reply in Support of Emergency Motion of Defendants-Appellants to Enforce this Court's October 2 Judgment and for an Injunction at 18-22, Doc. 00512452964 (Nov. 25, 2013) ("Reply in Support of Emergency Motion"). As BP has demonstrated, it is not subject to estoppel because it has consistently adhered to the settlement agreement's causal-nexus requirement for class membership. Renewed Motion at 35-40. And, as it has explained as well, its prior statements are consistent with that causal-nexus requirement. Renewed Motion at 40-45; Reply in Support of Emergency Motion at 18-22. In light of the Court's January 2 order, BP explains in greater detail below why the record here precludes application of judicial estoppel against BP.

A.     **BP Has Consistently Asserted A Single, Consistent Interpretation Of The Settlement Agreement.**

BP is not subject to judicial estoppel because it has not asserted "clearly inconsistent positions" on the settlement agreement's causal-nexus requirement for class membership. *In re Tex. Wyo. Drilling, Inc.*, 647 F.3d 547, 552 (5th Cir. 2011). Rather, BP has long maintained that the settlement agreement grants relief only to claimants that suffered loss as a result of the spill.

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 9

> **1.    BP Has Long Pressed Its Current Position Regarding The Causal-Nexus Requirement.**

BP has long maintained that the settlement agreement bars awards for claimants whose alleged losses lack a colorable causal nexus to the oil spill.  In particular, under the plain text of the settlement agreement's objective Business Economic Loss ("BEL") framework, the Claims Administrator must make a threshold determination that each claimant is a class member.  Footnote 1 of Exhibit 4B makes clear that Exhibit 4B does not apply to claimants "not included within the Economic Class definition."  Agreement Ex. 4B at 1 n.1 (ROA.13-30315.4260); *see* Renewed Motion at 13.  A BEL claimant is a class member only if he "suffered" "loss . . . *as a result of* the" Deepwater Horizon incident.  Agreement § 1.3.1.2  (ROA.13-30315.4071) (emphasis added).   This requirement is reinforced repeatedly throughout the settlement agreement, as well as in the court-approved Class Notice, Settlement Website, Claim Form and accompanying Instruction Booklet.  Renewed Motion at 13-15.  Where a claimant fails to plausibly allege a causal-nexus to the spill, Exhibit 4A requires the Claims Administrator to verify class membership *before* applying the objective causation formula of Exhibit 4B.  *Id.* at 15.

The district court erred in concluding that BP has deviated from that interpretation.  This is clear from the record materials addressed in BP's Renewed Motion (at 35-40), and from other statements in the record.

As far back as the April 25, 2012 preliminary approval hearing—one week after the settlement was first submitted to the district court—BP explained to the district court that the settlement agreement was "designed to fairly and adequately compensate those who were injured *as a result of* the oil spill."  ROA.13-30315.3617.

That Class Counsel might have had a different interpretation of the settlement did not become apparent until late November 2012, after the November 8 fairness hearing, when Class Counsel proposed advertising that solicited claims by persons and entities that lacked any plausible nexus to the spill.  As Class Counsel later acknowledged to the district court, the parties' dispute over causation arose at that point.  D.E. 9836 at 47.  Class Counsel admitted that BP had promptly objected to an interpretation that would compensate claimants whose losses were not traceable to the spill, and that BP had taken the position that "if a claimant subjectively didn't know or believe that they had a loss caused by the spill . . . it was 'fraudulent' to file a claim."  *Id.*

In response to the advertising proposal made by Class Counsel in November 2012, BP promptly presented the advertising dispute to the district court, *prior* to approval of the settlement.  In a December 7, 2012 letter to Magistrate Judge Shushan, for example, BP objected that the proposed ads "omit any reference to the Class itself and fail to mention that

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 10

*the Settlement Agreement requires a connection to the spill.*"  Emergency Motion, Ex. W at 3-4 (emphasis added).  BP thus explained that the ads were "confusing and misleading, contrary to Rule 23, and at odds with the terms of the Settlement Agreement as amended," including Section 1.3.1.2's definition of the BEL class.  *Id.* at 1-2.  BP further articulated its position that "[t]he Court-approved Notices, which are posted on the Settlement Program's website," also "accurately reflect this requirement of the Settlement Agreement." *Id.* at 3. Accordingly, BP concluded that it "cannot consent and the proposed [advertising] program cannot be approved." *Id.* at 1.

BP again addressed the issue in a December 11, 2012 letter to Magistrate Judge Shushan, explaining that the proposed ads are "not consistent with the original official Court-approved Notice Program, which specifies that the Settlement Program is designed to compensate for economic loss *arising from* the *Deepwater Horizon* spill."  Emergency Motion, Ex. Z (Ex. B) at 1 (first emphasis added).  BP expressed concern that "[t]hat inconsistency raises substantial risks of confusing and misleading both non-class members and potential class members, in violation of Rule 23 . . . ." *Id.*  In particular, BP emphasized that the proposed ads were "inconsistent with the provisions of the Settlement Agreement," including Section 1.3.1.2, "which expressly state that it provides compensation *only for economic losses that were caused by the Deepwater Horizon Incident*." *Id.* (emphasis added).  BP also told the court that the requirement "that a claimant is only entitled to make a claim for damages caused by the . . . spill . . . is expressly provided for . . . in the Court-approved Notice describing [the settlement agreement], and by the sworn Claim Forms developed by the Settlement Program with the input and consent of the Parties." *Id.* at 2 (citation omitted).  Accordingly, "[t]he vice in the proposed . . . spots," BP explained, "is that by omitting *the requirement that the spill caused the loss*, the spots would encourage viewers to submit claims for losses that have *nothing to do with the oil spill* and are *not covered* by the Settlement." *Id.* at 3 (emphases added).  BP's renewed motion describes these communications at length and details BP's later efforts to challenge proposed ads that "divorce[d], almost entirely, claimed damages from any causal nexus with the Deepwater Horizon Oil Spill."  Emergency Motion, Ex. Z (Ex. I) at 1; *see* Renewed Motion at 35-39.

Further confirming that BP has consistently sought enforcement of the causal-nexus requirement for class membership, BP contemporaneously began to appeal Court-Supervised Settlement Program (CSSP) awards when they were granted to claimants whose alleged losses lacked a causal nexus to the spill.  Indeed, Class Counsel have admitted that BP did this.  As Class Counsel told the district court on April 5, 2013, BP has appealed "hundreds, maybe even thousands" of such awards, and BP consistently argued that "the right to recover are limited to those who had a loss due to the spill" and that recovery is therefore barred absent some "indication in the record as to what possible basis" that the claimant "could have any losses associated with the spill."  D.E. 9836 at 49.  Class Counsel further admitted that

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 11

BP's position was that if a claimant's losses are not plausibly "caused by the spill, . . . *they're* [*not*] *a class member and they don't have a right to recover*[,] [*e*]*ven though they meet the causation* [*requirements*] *under 4B.*"  *Id.* at 51 (emphasis added).  Thus, Class Counsel admitted more than nine months ago that BP had long taken the position that Exhibit 4B did not provide the sole test for causation under the settlement.  Class Counsel also admitted that BP was citing Section 1.3.1.2 of the settlement agreement—which sets forth the central definition for class membership for economic loss—in support of its causal-nexus argument. *Id.* at 49 ("[C]lass membership and the right to recover are limited to those who had a loss due to the spill.  So that's the position they're talking in all of these appeals right now.  The class definition issue I thought was put to rest before.  They continuously cite 1.3.1.2 . . . .").

In short, in April 2013, Class Counsel expressly admitted to the district court that BP had long been taking the very position that it has continued to take before the district court and this Court in connection with the remand proceedings.  And BP's correspondence concerning the advertising issue that arose in December 2012 conclusively establishes that BP was taking that same position both before and after approval of the settlement.  *See supra*, Part II-A-1; Renewed Motion at 35-39.  Class Counsel's and the district court's belated claims to the contrary are belied by the undisputed documentary record and by Class Counsel's own on-the-record representations to the district court—which the district court did not challenge or express any disagreement with at the time.

> **2.     BP's Long-Standing Position Regarding The Causal-Nexus Requirement For Class Membership Is Fully Consistent With The Allegedly Inconsistent Statements Invoked By The District Court.**

As BP has also explained in detail, BP has never departed from its position that the settlement agreement contains a causal-nexus requirement for class membership.  *See* Renewed Motion at 40-45.  In concluding otherwise, *see* D.E. 12055 at 17, the district court disregarded—and did not even *acknowledge*—BP's long record of support for and insistence on the causal-nexus requirement.  *See, e.g.*, Renewed Motion at 35-40.  The district court also failed to identify a single instance in which BP:  (1) stated that the settlement permits claimants to qualify as class members even if their alleged losses have no plausible nexus to the spill; (2) took a position on the meaning of footnote 1 of Exhibit 4B that conflicts with the position it now advances; or (3) told the district court that "whether a loss occurred 'as a result of' the Deepwater Horizon Incident is determined exclusively by Exhibit 4B," D.E. 12055 at 17.  Those are the key issues raised by BP's interpretation of the causal-nexus requirement, but the district court did not and could not point to any record materials establishing that BP took a position on any of those three core issues that is contrary to the position BP is advancing here.  Given the absence of any statements by BP directly contradicting its repeated insistence on enforcement of the causal-nexus requirement for

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 12

class membership, the district court's judicial-estoppel ruling rests only on what it sees as the alleged *implications* of certain statements that BP has made regarding the BEL framework laid out in Exhibits 4B and 4C. But this Court has rightly "expressed reluctance to apply judicial estoppel in situations where a party's alleged change of position is '*merely implied* rather than clear and express,'" *Oparaji*, 698 F.3d at 237 (emphasis added); *see also Griffith* v. *Wal-Mart Stores, Inc.*, 135 F.3d 376, 382 (6th Cir. 1998) (rejecting judicial estoppel because past statements were "not necessarily inconsistent" and "open to interpretation"). And that should be particularly true in a case like this one, where the record is replete with consistent and repeated statements over a long period of time in which BP insisted upon an interpretation of the settlement agreement that enforces the causal-nexus requirement for class membership. In any event, BP's description of the BEL framework accords fully with its longstanding position regarding the causal-nexus requirement.

> **a.** **BP's Past Statements To The District Court Accord With Its Insistence On Enforcement Of The Causal-Nexus Requirement For Class Membership.**

As BP explained in its Renewed Motion (at 40-41), the district court's list of BP's purportedly inconsistent statements boils down to five propositions that BP has not denied: (1) that the BEL framework set forth in Exhibit 4C of the settlement agreement relies on "objective," "transparent," "standardized," methodologies that are "reasonable," "fair," "economically appropriate," and "consistent with . . . economic reality," D.E. 12055 at 18 (citations omitted); (2) that Exhibit 4B of the agreement presumes causation for certain claimants, *id.* at 14; (3) that Exhibit 4B's presumption of causation for certain class members will inevitably produce awards to claimants who would not have prevailed in proving causation at trial, *see id.* at 14-15; (4) that claimants subject to the Exhibit 4B presumption (and thus already shown to be class members) "need not provide evidence to establish causation" under Exhibit 4B, *id.* at 14 (citation omitted); and (5) that "[o]nce the causation tests are satisfied, all revenue and variable profit declines during the Compensation Period are presumed to be caused entirely by the spill," *id.* at 16 (emphasis added; citation omitted); *see also id.* at 13, 17 n.15. Each of these statements is fully consistent with BP's interpretation of the settlement's threshold causal-nexus requirement for class membership, and neither the district court nor Class Counsel show otherwise.

*First*, BP has explained on several occasions that the BEL framework set forth in Exhibits 4B and 4C relies on "objective, data-driven methodologies" (ROA.13-30315.15846) designed to be "administered fairly, objectively, and consistently" (ROA.13-30315.6391). *See also* ROA.13-30315.6304, 6798, 8536, 8610, 15844. The district court suggested that these statements regarding the objective nature of the BEL framework conflict with BP's position that the settlement contains a causal-nexus requirement for class membership. But

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 13

there is no conflict.  As footnote 1 of Exhibit 4B expressly provides (ROA.13-30315.4260), the objective BEL framework comes into play only for class *members*, and class members are only those who have a colorable claim of causation.

In any event, there is no reason to doubt that the threshold causal-nexus requirement for class membership can be fairly, objectively, and consistently administered—no subjective judgment is required, for example, to recognize that a business shut down by fire, by a sale of substantially all assets, by a revoked business license, or by any other factor unrelated to the spill, *see* Emergency Motion, Ex. Q, App. A ¶¶ 1, 2, 24, did not suffer spill-related loss. Determining whether the circumstances surrounding a particular claim give rise to a plausible inference of causation is something that courts routinely do without the need for evidentiary proceedings, *see, e.g., Oceanic Exploration Co.* v. *Phillips Petroleum Co. ZOC*, 352 F. App'x 945, 952 (5th Cir. 2009) (affirming dismissal for failure to "plead facts plausibly demonstrating" proximate causation); *see also Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007) (requiring that plaintiff present "enough facts to state a claim to relief that is plausible on its face"); there is no reason why the CSSP could not readily make such assessments based on the claim file and the nature and geographic location of the claimant's business.[2]  Indeed, in many cases the claimants themselves do not even pretend that they suffered losses due to the spill, *see* Renewed Motion at 20-21; instead, their position simply

---

[2]  Making that determination would not require a full "inquiry into the merits," D.E. 12055 at 23 (quoting *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 308 (3d Cir. 2011) (en banc)), or "an intensive cataloguing of each class member's claim," *id.* at 27 (quoting *Sullivan*, 667 F.3d at 346 (Jordan, J., dissenting)), as the district court suggested, and need not be any more arduous than other aspects of the CSSP process.  The district court did not dispute that the class definition already requires an independent inquiry into whether the claimant is an entity excluded from the class on other grounds (such as its status as a casino or an oil and gas company), *see* Agreement § 2 (ROA.13-30315.4074-77), nor did the court deny that the Claims Administrator has sometimes acted on evidence from BP to exclude claimants who improperly failed to identify themselves as excluded entities, *see* Emergency Motion, Ex. P at 15.  Similarly, the district court recently recognized that the settlement agreement and this panel's October 2 decision require the Claims Administrator to "match revenue with corresponding variable expenses" for each BEL claimant in calculating Variable Profit.  D.E. 12055 at 5. Compliance with the causal-nexus requirement for class membership is no more burdensome or individualized than these other determinations, which are fully consistent with the settlement's objective, data-driven methodologies and the settlement's goal of avoiding "the delays that would result from having to engage in a claim-by-claim analysis" on the merits.  D.E. 12055 at 24.

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 14

has been that if they satisfy Exhibit 4B they should be permitted to recover under the settlement even where the alleged loss admittedly has nothing to do with the spill.

*Second*, BP has stated that, for purposes of damages calculations, Exhibit 4B presumes causation only for businesses in certain geographic zones and industries. ROA.13-30315.1990, 6390-91, 6416, 6695 ¶ 24, 8559 ¶ 117, 8560 ¶ 122, 15870. For class members entitled to this presumption, the presumption is "irrebuttable." ROA.13-30315.8257. The district court correctly recognized that a claimant that meets the geographic and industry requirements for a presumption of causation but lacks a colorable claim to spill-related loss "would not be a class member and thus not entitled to compensation under the Settlement." D.E. 12055 at 17. It therefore mistakenly concluded that under BP's current interpretation, "the causation presumption clearly was not 'irrebuttable,' as BP's counsel previously told the Court." *Id.* Contrary to the district court's unjustified inference, there is no conflict in these positions. The presumption of causation is irrebuttable for those claimants *to which it applies*, but because it is a feature of Exhibit 4B, which applies only to class *members*, the presumption simply *does not apply* to claimants "not included within the Economic Class definition." Agreement Ex. 4B at 1 n.1 (ROA.13-30315.4260). A business that lacks any colorable claim of spill-related loss is not a class member, and therefore not entitled to a presumption of causation regardless of its geographic location or industry. *See* Renewed Motion at 13-15, 28-31. There is accordingly no need to rebut the presumption in that circumstance—it simply never comes into play. For certain types of *class members* (who plausibly allege a causal-nexus to the spill), however, the presumption of causation is irrebuttable, even in the face of evidence that might have persuaded a jury that a class member's loss was attributable to an alternate cause. BP's interpretation of the settlement is therefore fully consistent with the presumption of causation applicable to certain claimants.[3]

*Third*, BP has also acknowledged that the presumption of causation and the V-test/revenue-loss proxy for actual proof of causation set forth in Exhibit 4B will inevitably produce awards to claimants who would not have succeeded in proving causation at trial. ROA.13-30315.6695. But that does not conflict with BP's current (and past) position either. All large-scale settlements will inevitably award some plaintiffs who likely would not have prevailed at trial. Under BP's interpretation of the settlement, however, these "false positives" are limited to claimants with colorable claims that might not have prevailed at

---

[3]   In fact, in the same hearing in which BP's counsel described the presumption as irrebuttable, he also stated that the settlement agreement did not extend to individuals with no injury from the spill, but rather is "designed to fairly and generously compensate the legitimate claims of *those who were injured as a result of the oil spill*." ROA.13-30315.8239 (emphasis added).

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 15

trial—and therefore "should be relatively rare." ROA.13-30315.15844. Accordingly, BP's statements recognizing the possibility of false positives are fully consistent with its position that, as Judge Clement concluded, a settlement may not "includ[e] claimants in the class definition that lack *colorable claims*." *Deepwater Horizon*, 732 F.3d at 341 (opinion of Clement, J.) (emphasis added).

*Fourth*, BP has recognized that class members that are entitled to benefit from the presumption of causation "will not be required to provide documentation demonstrating causation" when submitting a claim under Exhibit 4B. ROA.13-30315.1993. The district court believed that statements like this conflict with BP's insistence on enforcement of the causal-nexus requirement for class membership. But once again, the district court was obviously mistaken. The lack of additional documentation requirements for *class members* that benefit from the presumption of causation has nothing to do with the Claims Administrator's authority and responsibility to ensure that claimants meet the prerequisites for class membership, including the causal-nexus requirement. The settlement agreement empowers the Claims Administrator to "verif[y]" statements in claims forms by obtaining additional information necessary to determine class membership when the claimant's allegations of causation are not colorable. Agreement Ex. 4A (ROA.13-30315.4255).

*Fifth*, BP has emphasized the generosity of the settlement agreement's compensation formula for class members who satisfy the causation requirement. "*Once the causation tests are satisfied*, all revenue and variable profit declines during the Compensation Period are presumed to be caused entirely by the spill." ROA.13-30315.8562 ¶ 126 (emphasis added); *see also* ROA.13-30315.8559 ¶ 117, 8560 ¶ 122, 15846; Emergency Motion, Ex. T at 4. This, too, does not conflict with BP's current (and past) position. The formulas in Exhibit 4B obviate the need for what might otherwise become an inherently subjective assessment of the relative effect of multiple concurrent causes, all of which contributed to declining revenue. Critically, however, those formulas in Exhibit 4B do not come into play until a colorable causal nexus has been shown, and thus they do not eliminate the need for a plausible showing of causation at the class-membership stage.

BP's other statements in support of the settlement reiterate these principles. For example, in the only statement the district court analyzed at any length, BP explained at the hearing on the settlement's fairness that the settlement irrebuttably "presume[s] causation" in Zone A even for claimants who "think they have got a claim . . . for economic loss; but, when the facts come out, they had a bad year because they lost their key manager, [or] they had a bad year because the street was being repaired in front of them, whatever reason." D.E. 12055 at 15 (quoting ROA.13-30315.8257). The district court believed that "[u]nder BP's current interpretation," such claimants would categorically "not be . . . class member[s] and thus not entitled to compensation under the Settlement." D.E. 12055 at 17.

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 16

Accordingly, the court concluded that BP's current interpretation was inconsistent with its prior statements that such Zone A claimants would be entitled to an "irrebuttable" presumption of causation. This was mistaken. BP has never suggested that a Zone A business that loses its key manager cannot plausibly allege spill-related loss. Unlike, for example, a business whose entire revenue loss is attributable to factors unrelated to the spill (*see, e.g.*, Emergency Motion, Ex. Q App. A, ¶¶ 1, 2, 24), a tourism business located in Zone A that loses its key manager may still be able to establish a plausible inference that it had reduced revenues resulting from the spill, even though those revenue declines were further exacerbated by the personnel change. Accordingly, such a business could meet the qualifications for class membership under BP's interpretation of the settlement and thereby gain the benefit of an "irrebuttable" presumption of causation for Zone A and certain other businesses, just as BP told the district court.

> **b.    BP's Past Statements To The Claims Administrator Accord With Its Defense Of The Causal-Nexus Requirement.**

BP's interpretation of the settlement agreement is also fully consistent with its statements in connection with the Claims Administrator's October 10 policy announcement, on which the district court also relied. D.E. 12055 at 16 n.14, 39-41. On September 25, 2012, the Claims Administrator sent a letter to both parties posing a question about the proper application of the settlement agreement's compensation formula to class members who satisfied the settlement's causation requirements: "*once a claimant passes the causation threshold*, is the claimant entitled to recovery of *all* losses as per the formula set out in Exhibit 4C, or is some consideration to be given so as to exclude those losses clearly unrelated to the spill?" ROA.13-30315.15839 (first emphasis added). As explained above, the answer to the Claims Administrator's question is clear from BP's statements in support of the settlement: "[o]*nce the causation tests are satisfied*, all revenue and variable profit declines during the Compensation Period are presumed to be caused entirely by the spill." ROA.13-30315.8562 ¶ 126 (emphasis added). Accordingly, BP responded to the Claims Administrator, agreeing that in circumstances where the causation tests have been satisfied based on accurate financial data, "[n]othing in the BEL Causation Framework (Ex. 4B) or Compensation Framework (Ex. 4C) provides for an offset where . . . extraneous non-financial data indicate that the decline [in revenues] was attributable to a factor wholly unrelated to the Oil Spill." ROA.13-30315.15844. But footnote 1 of Exhibit 4B makes clear that these frameworks apply *only* after the Claims Administrator properly makes a threshold causal-nexus determination for purposes of class membership. *See* Renewed Motion at 28-31; Agreement Ex. 4B, at 1 n.1 (ROA.13-30315.4260). And, of course, the causal-nexus requirement for class membership requires a plausible nexus between the claimant's *loss* and the spill; Exhibit 4B, on the other hand, focuses solely on changes in *revenue*.

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 17

The Claims Administrator concluded in his October 10, 2012 policy announcement that the CSSP would "compensate *eligible* Business Economic Loss and Individual Economic Loss claimants for all losses payable under the terms of the Economic Loss frameworks in the Settlement Agreement, without regard to whether such losses resulted or may have resulted from a cause other than the Deepwater Horizon oil spill provided such claimants have satisfied the specific causation requirements set out in the Settlement Agreement." ROA.13-30315.15863-64 (emphasis added). The October 10 announcement did not address the requirements for class membership, and gave no indication that the Claims Administrator also intended to compensate *ineligible* (*i.e.*, non-class-member) claimants who lacked any plausible nexus to the spill.

BP cannot be judicially estopped by its out-of-court statements to the Claims Administrator or by not immediately appealing the Claims Administrator's policy announcement. As shown above, the policy announcement as written is not "clearly inconsistent" with BP's interpretation of the settlement. Moreover, judicial estoppel requires that "*the party against whom judicial estoppel is sought* has asserted" inconsistent legal positions, *Oparaji*, 698 F.3d at 235 (emphasis added), and therefore has no application to statements by third parties. Nor does BP's failure to immediately challenge the policy announcement waive its rights to enforce the settlement agreement as written. *See Wells Fargo Bus. Credit* v. *Ben Kozloff, Inc.*, 695 F.2d 940, 947 (5th Cir. 1983) ("[A] waiver cannot be inferred from silence alone. In the absence of an express renunciation, there must be an act from which an intention to waive may be inferred or from which waiver follows as a legal result."). Indeed, BP had no reason to challenge the policy as written, because that policy did not even address, and certainly did not purport to eliminate, the causal-nexus requirement for class membership.

BP thus made no inconsistent statements in connection with the October 10 policy. The district court pointed to its own December 12, 2012 one-page e-mail addressing an *in camera* status conference held that same day, which states that BP orally "agree[d] with the Claims Administrator's objective analysis of causation with respect to his evaluation of economic damage claims, as previously set forth by Mr. Juneau in paragraph 2 of his October 10, 2012 policy announcement." ROA.13-30315.15881. But that statement says nothing about the causal-nexus requirement for class membership, and thus is not inconsistent with BP's insistence on enforcement of that requirement. The undisputed record reflects that "[t]he majority of the [December 12] status conference focused on the nonprofits issue," with only a "brief discussion" of causation in relation to the proposed ads. Emergency Motion, Ex. Z ¶ 6. That "discussion . . . did not address the threshold question of class membership"; instead, BP merely "agreed" with the district court "that the causation tests of Exhibit 4B are objective," *id.*, as it has stated repeatedly throughout this litigation, *see supra* Part II-A-1. The parties' dispute over the causal-nexus requirement (as shown by

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 18

the contemporaneous correspondence regarding the proposed advertising) remained unresolved, as the district court acknowledged in recognizing the continued need to "resolve any remaining issues with respect to the [proposed ads.]." ROA.13-30315.15881.

Indeed, any suggestion that BP somehow abandoned its position on causation at the December 12 conference is belied by BP's continued assertion of that position *after* the conference. *See* Renewed Motion at 35-39; Reply in Support of Emergency Motion at 21-22. For example, just two days after the December 12 conference, BP expressly reiterated the settlement's causal-nexus requirement in writing by e-mailing Class Counsel about clarifying the proposed ads to indicate that claimants may qualify as class members only if they "had a loss *as a result of* the Spill" or "were damaged *as a result of* the Spill." Emergency Motion, Ex. Z (Ex. C) at 1 (emphases added). BP and Class Counsel ultimately agreed to language stating that "Damages must be *as a result of* the Deepwater Horizon Incident as provided in the Deepwater Horizon Economic and Property Damages Settlement Agreement." Emergency Motion, Ex. Z ¶¶ 8-12 & n.2. BP continued to object to other aspects of the proposed ads, explaining to the district court on February 15, 2013, that the proposed ads "divorce[d], almost entirely, claimed damages from any causal nexus with the Deepwater Horizon Oil Spill. That is inappropriate, confusing and misleading—and also contrary to the express terms of the parties' Settlement Agreement." Emergency Motion, Ex. Z (Ex. I) at 1. BP emphasized that Class Counsel's approach "would inevitably create unrealistic expectations" because "[c]laims only should be filed by those who believe and attest that they have suffered a loss caused by the oil spill. That is what the Registration Form and Claim Form provide." *Id.* at 4. And, as noted, Class Counsel complained two months later at the April 5, 2013 hearing that BP had taken hundreds of appeals with the CSSP based on the causal-nexus issue. *See supra* Part II-A-1.

In any event, BP's "off-the-record statement, made informally under the circumstances present here, whose interpretation is disputed and, indeed, [at a minimum] reasonably susceptible to different meanings, does not qualify as 'unequivocal'" and therefore cannot support a holding of judicial estoppel. *Henrob Ltd.* v. *Bollhoff Systemtechnick GmbH & Co.*, No. 05-CV-73214-DT, 2008 WL 114794, at *2 (E.D. Mich. Jan. 9, 2008).

\*    \*    \*

In sum, BP's statements in support of the settlement are "far from unequivocal" endorsements of an inconsistent position. *Elementis Chromium L.P.* v. *Coastal States Petroleum Co.*, 450 F.3d 607, 611 n.2 (5th Cir. 2006). Moreover, the district court failed to carefully review the record before concluding that "until recently BP interpreted the Settlement in the same manner as the Claims Administrator and Class Counsel." D.E. 12055

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 19

at 19. Instead, the record confirms that BP has consistently interpreted the settlement to bar class membership for claimants with no colorable claim to spill-related loss.

> **B.    BP Did Not Mislead The District Court Into Accepting An Interpretation Of The Settlement Agreement That Lacks A Causal-Nexus Requirement.**

Even if BP's statements could be read to imply an inconsistent position—and they cannot—judicial estoppel still could not be applied here because the district court never "accepted" BP's purportedly conflicting "original position" in response to those statements. *Oparaji*, 698 F.3d at 235.

> **1.    The District Court Did Not Accept Any Allegedly Conflicting Position Advocated By BP.**

In the December 24 order at issue here, the district court contends that it accepted the position—purportedly advocated by BP—that the settlement does not impose a causal-nexus requirement for class membership in its December 12, 2012 e-mail and December 21, 2012 order approving the settlement. The district court is wrong.

First, the district court states that "[t]he Court . . . accepted BP's position on December 12, 2012," *see* D.E. 12055 at 18 n.16—a reference to the December 12 e-mail discussed above, *see supra* Part II-A-2-b, in which the district court stated that "[c]ounsel for BP and the PSC agree with the Claims Administrator's objective analysis of causation with respect to his evaluation of economic damages Claims, as previously set forth by Mr. Juneau in paragraph 2 of his October 10, 2012 policy announcement," *see* D.E. 12055 at 16 n.14 (quoting ROA.13-30315.15881). The district court did not explain what specific position this passing remark—unconnected to any holding on the merits of the litigation—purports to "accept." In any event, nothing in the referenced paragraph expresses the position that there is no causal-nexus requirement for class membership or that the settlement permits awards to *ineligible* claimants with no colorable claim to spill-related loss. *See supra* Part II-A-2-b. The October 10 policy announcement simply did not address those issues, nor did the *in camera* conference on December 12, so there is no sense in which the district court can be said to have "accepted" any purported BP position regarding the supposed absence of a causal-nexus requirement for class membership. *See id.* Moreover, any purported "acceptance" of BP's position in the December 12 e-mail is not reflected in the court's final approval order, which does not reference either the e-mail or the October 10 policy announcement.

Second, the district court also concluded—again without citing any specific statement—that it had "accepted BP's previous position when it certified the Settlement Class and approved the Settlement on December 21, 2012." D.E. 12055 at 18. Once again,

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 20

the district court is mistaken. The final approval order does not hold that "whether a loss occurred 'as a result of' the Deepwater Horizon Incident is determined exclusively by Exhibit 4B." D.E. 12055 at 17. It does not hold that the settlement confers class membership on claimants whose alleged losses have no plausible nexus to the spill. And it does not even mention or cite footnote 1 of Exhibit 4B, nor does it assert that Exhibit 4B applies to claimants who do not meet the threshold requirements for class membership.

In fact, far from denying the existence of the causal-nexus requirement for class membership, the final approval order actually *endorses* BP's present position. The final approval order reiterates no fewer than four times that under the settlement, "each class member *traces his injury directly* to the [spill]." ROA.13-30315.12190 (emphasis added); *see also* ROA.13-30315.12175 ("all class members . . . allege economic and/or property damage *stemming directly from* the . . . spill." (emphasis added)); ROA.13-30315.12183 ("all claims *arose from* a single event" (emphasis added)); ROA.13-30315.12189 ("all members of the class *trace* their injury to a single known accident" (emphasis added)). The district court did not attempt to explain how these statements can be reconciled with its assertion in the remand proceedings that the final approval order purportedly "accept[s]" BP's supposed (but unidentified) statements that class members *need not* trace their injury to the spill. D.E. 12055 at 18.

Moreover, the final approval order simply echoes the district court's earlier statements in its May 2 preliminary approval order, in which the court explained that the settlement was designed "to resolve certain claims by private individuals and businesses for economic loss and property damage *resulting from* the 'Deepwater Horizon Incident.'" ROA.13-30315.4015 (emphasis added). The court therefore recognized that the claims covered by the settlement "all *arise out of* the same nucleus of operative facts," namely "the blowout of the MC252 Well and the sinking of the *Deepwater Horizon*." ROA.13-30315.4039 (emphasis added).

These statements also accord with the assurances that Class Counsel repeatedly made to the district court and to class members all along: that the settlement is carefully designed—and carefully limited—to provide compensation for spill-related losses. In the operative complaint, for example, Class Counsel "assert[ed] claims . . . seeking damages . . . *arising from* the well blowout, fire, and explosions aboard, and sinking of, the Deepwater Horizon on April 20, 2010, and the subsequent Oil Spill in the Gulf of Mexico." ROA.13-30315.3666 (emphasis added); *see also* ROA.13-30315.3782 ("[T]he injuries and damages suffered by Plaintiffs were *caused by* the acts and/or omissions of Defendants.") (emphasis added); ROA.13-30315.3789 ("*As a result of* the Deepwater Horizon Incident, Plaintiffs are entitled to damages . . . .") (emphasis added). The complaint accordingly defined the

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 21

plaintiffs as "individuals and/or entities who have suffered economic and property damages *as a result of* the Deepwater Horizon Incident." ROA.13-30315.3670 (emphasis added).

That is also how the parties—with the district court's approval—defined the class members in the official Class Notice, Settlement Website, and the settlement program's Claim Form and Instruction Booklet. *See, e.g.*, Renewed Motion at 13-15. Indeed, Class Counsel's websites continue to take the same position today. *See* Motley Rice, http://www.motleyrice.com/bp-oil-spill-settlement (website of lead Class Counsel negotiator) (last visited Jan. 8, 2014) ("If you and/or your business suffered *as a result of* the Deepwater Horizon oil spill, you may be eligible to participate in one settlement program or both." (emphasis added)); *id.* ("If you have been hurt economically, had property damage, or suffered a physical injury *as a result of* the Deepwater Horizon oil spill and would like to consult with a lawyer regarding your rights, please contact Motley Rice . . . ." (emphasis added)); Weitz & Luxenberg, PC, http://www.weitzlux.com/2010-BP-Oil-Spill-law-firm_1962454.html (last visited Jan. 8, 2014) ("If you or your livelihood were *harmed by* the 2010 BP Gulf oil-spill, you may be entitled to compensation." (emphasis added)); Lieff, Cabraser, Heimann & Bernstein, LLP, http://www.lieffcabraser.com/Case-Center/BP-Gulf-Oil-Spill.shtml (last visited Jan. 8, 2014) ("People, businesses, and other entities . . . that were *harmed by* the oil spill may submit a claim for economic loss or property damage." (emphasis added)); *id.* ("If you have economic loss or property damage *because of* the Deepwater Horizon oil spill, Lieff Cabraser can assist you in submitting a claim and ensuring that you obtain the full value of your losses." (emphasis added)). In deciding whether to opt out or remain in the class, class members surely relied on these statements, in which Class Counsel never suggested that they were jointly representing illegitimate claimants with no nexus to the spill. *See* Renewed Motion at 20-21.

In their joint submissions in support of preliminary and final approval of the settlement, the parties likewise emphasized that the purpose of the settlement is to compensate losses caused by the spill, and that the settlement compensates only claimants with spill-related injuries. On April 18, 2012, for example, the parties told the court that plaintiffs sought "to certify a class of individuals and businesses that suffered economic loss or property damage *as a result of* the *Deepwater Horizon* Incident," ROA.13-30315.1980 (emphasis added), and that the parties sought approval of a settlement permitting claimants "to recover for all demonstrable losses *arising from* the *Deepwater Horizon* Incident," ROA.13-30315.1978 (emphasis added). The parties jointly emphasized that "[t]he settlement was negotiated and crafted by the parties with the guiding principle of providing individualized, fair, and full compensation for *victims of* the oil spill." ROA.13-30315.2001 (emphasis added). Accordingly, "[t]he settlement's *most salient feature* is that it makes whole the myriad of plaintiffs asserting that they have suffered economic loss or property damage *as a result of* the *Deepwater Horizon* Incident." ROA.13-30315.1980 (emphasis

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 22

added).  Similarly, in support of final approval, the parties jointly argued that "[t]he Proposed Settlement is designed to resolve claims by private individuals and businesses for economic loss and property damage *resulting from* the *Deepwater Horizon* Incident."  ROA.13-30315.5800 (emphasis added).  The parties also submitted joint proposed findings that "*all members of the class trace* their injury to a single known accident," ROA.13-30315.8637 (emphasis added).

Nowhere in their joint motions supporting preliminary or final approval—or anywhere else—did Class Counsel even suggest that the settlement was crafted to provide "compensation for victims of" anything other than the oil spill.  Instead, the consistent position of the parties was that the settlement was designed to compensate losses that resulted from the spill, and that *all* class members thus necessarily suffered such loss.  In light of those assertions, it is no surprise that the district court never—until very recently—adopted an interpretation of the settlement that permits awards to claimants who cannot even plausibly allege that they suffered any injury as a result of BP's conduct.  Only *after* this Court's October 2 decision—in direct conflict with the district court's (and Class Counsel's) earlier statements that *all* claimants have a causal nexus to the spill—did the district court state that the settlement "permi[ts] a non-colorable claim to recover."  D.E. 12055 at 27 (Dec. 24, 2013); *see also* Emergency Motion, Ex. B at 3-4.

In sum, the district court never accepted a position inconsistent with BP's current interpretation of the settlement, and thus judicial estoppel is inapplicable for this reason as well.

> ## 2.      The District Court Could Not Have Relied On BP's Statements In Endorsing Class Counsel's Rejection Of The Causal-Nexus Requirement.

Even if the district court had adopted a position that rejected a causal-nexus requirement for class membership in December 2012—which it did not—it would not have done so (and could not reasonably have done so) in reliance on BP's statements.  This separate prerequisite to the application of judicial estoppel requires both "judicial acceptance of, and *reliance on*," a litigant's "previous inconsistent position."  *Ahrens* v. *Perot Sys. Corp.*, 205 F.3d 831, 836 (5th Cir. 2000) (emphasis added); *see also Hall* v. *GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 399 (5th Cir. 2003) (applying judicial estoppel because the "court 'necessarily accepted, and relied on' a party's position in making a determination" (quoting

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 23

*Ahrens*, 205 F.3d at 836)).[4]   Without actual reliance by the court on prior inconsistent statements by the party to be estopped, there can be no finding that the court was "misled," *Oparaji*, 698 F.3d at 235, and thus no equitable basis for asserting estoppel.

The district court here could not have relied on BP's statements to reject a causal-nexus requirement for class membership, because BP repeatedly insisted on *enforcement* of that very requirement in the weeks preceding the two orders in which the district court now purports to have rejected that requirement.  As explained above, BP's December 7, 2012 letter to Magistrate Judge Shushan explicitly reminded the district court that "the Settlement Agreement requires a connection to the spill."  Emergency Motion, Ex. W (Ex. A) at 3-4.  And its December 11, 2012 letter to Magistrate Judge Shushan further explained that Section 1.3.1.2 and other provisions of the settlement agreement "*expressly state* that it provides compensation only for economic losses that were *caused by* the *Deepwater Horizon* incident."  Emergency Motion, Ex. Z (Ex. B) at 1 (emphasis added).  Faced with these and other clear statements, *see supra* Part II-A-1, the district court could not have reasonably believed that it was relying on *BP* in supposedly adopting an interpretation that rejected a causal-nexus requirement for class membership.  And it certainly never *said* it was relying on BP in adopting any such position until *after* this Court's October 2 decision, and in response to BP's arguments urging *enforcement* of the causal-nexus requirement.

> ### 3.     In Any Event, Any Conceivably Inconsistent Statements By BP Were Harmless.

Even if the district court had endorsed Class Counsel's interpretation of the settlement and somehow had done so in reliance on BP's purportedly inconsistent statements—though in fact it did neither—judicial estoppel would still be inappropriate because "it is not apparent that [BP] prevailed on any issue because of its alleged inconsistent position."  *Honeywell Int'l, Inc.* v. *Hamilton Sundstrand Corp.*, 523 F.3d 1304, 1315 (Fed. Cir. 2008).  The district court has not suggested that its final approval order turned on anything that BP said regarding the settlement agreement's causal-nexus requirement—let alone on the court's passing, ambiguous statements about the Claims Administrator's October 10 policy in its December 12, 2012 e-mail, which (like the policy announcement) is not even cited in the final approval order.  Quite to the contrary, in fact,

---

[4]   "Because the doctrine is intended to protect the judicial system, *rather than the litigants*, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary."  *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir.1999) (emphasis in original); a*ccord Hall*, 327 F.3d at 399-400.  But that is precisely why detrimental reliance *by the court* is required.

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 24

many of the district court's findings in support of class certification turn on the existence of a robust causation requirement. *See, e.g.*, ROA.13-30315.12175 ("Typicality is satisfied here, as the class representatives—like all class members—allege economic and/or property damage *stemming directly from* the *Deepwater Horizon* spill." (emphasis added)); ROA.13-30315.12189-90 (finding predominance after reasoning that "[b]ecause all members of the class trace their injury to a single known accident . . . this case bears no resemblance to *Amchem*, in which the class consisted of individuals 'exposed to different asbestos containing products, for different amounts of time, in different ways, and over different periods'" (quoting *Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 624 (1997))); *see also* ROA.13-30315.12190 ("In contrast to *Wal-Mart*, . . . here *each class member traces his injury directly to the same genesis*-a single well blowout stemming from the same operative causes." (citing *Wal-Mart Stores, Inc.* v. *Dukes*, 131 S. Ct. 2541, 2554 (2011)) (emphasis added)).

Thus, "[t]he record does not link [BP's] success on these issues to its [allegedly inconsistent] argument[s]." *Honeywell*, 523 F.3d at 1315. BP therefore would not "derive an unfair advantage or impose an unfair detriment on [legitimate class members] if not estopped," making judicial estoppel inappropriate. *New Hampshire* v. *Maine*, 532 U.S. 742, 751 (2001); *accord* 18B Charles Alan Wright, *et al.*, Fed. Prac. & Proc. § 4477 (2d ed. 2013); *see also Int'l Union of Operating Eng'rs* v. *Cnty. of Plumas*, 559 F.3d 1041, 1043 (9th Cir. 2009). Indeed, BP's present (and past) position that the settlement agreement requires a plausible causal nexus for class membership imposes no detriment on legitimate class members, whose interest is in avoiding an interpretation that would "imperil a final approval of the settlement." *Deepwater Horizon*, 732 F.3d at 344. That interest trumps any interest in salvaging claims by those with no causal nexus to the spill. "It is difficult to see how equity would be served by punishing" legitimate class members, *Montrose*, 243 F.3d at 786, who were led by Class Counsel and by the court-approved Class Notice to believe that Class Counsel represented only claimants who suffered "economic loss or property damage *because of* the Deepwater Horizon oil spill," ROA.13-30315.6097; *see also supra* Part II-B-1; Renewed Motion at 13-15. BP's present position hurts no legitimate claimants and simply prevents non-class members from obtaining windfalls for losses unrelated to the spill. Such claimants therefore lack standing in this litigation, *see* Renewed Motion at 23-28, and cannot assert judicial estoppel.

Moreover, even if the district court had relied on BP's purported no-nexus position in its final approval order, any risk of inconsistent decisions would be mitigated by the pending appeal of that order. BP has already notified the certification panel that the causal-nexus requirement for class membership must be enforced in order to preserve the settlement and that BP is urging that position in the remand proceedings ordered by this panel. *See* Letter from Theodore B. Olson to Clerk of Court at 9, Doc. 00512405186 (No. 13-30095) (Oct. 11,

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 25

2013) ("If the remand proceedings ordered by the BEL panel ultimately lead to the adoption of the interpretations of the BEL framework that BP urges—as to both the Variable-Profit Decision and the Causation Policy—the otherwise fatal obstacles to class certification and settlement approval identified by BP and the objectors would be eliminated."); Letter from Theodore B. Olson to Clerk of Court at 1-2, Doc. 00512482252 (No. 13-30095) (Dec. 26, 2013) ("BP will expeditiously pursue its appeal from the district court's failure to enforce the settlement agreement's causal-nexus requirement for class membership . . . ."). Accordingly, there is no risk that the certification panel will be deceived into relying on any purportedly inconsistent prior statements by BP in reviewing the final approval of the settlement.

Thus, even if BP could properly be deemed to have made inconsistent statements—and it cannot—any such statements would be harmless. Judicial estoppel therefore cannot be applied here. *See Republic of Ecuador* v. *Connor*, 708 F.3d 651, 657 (5th Cir. 2013) ("We have found no authority suggesting that 'harmless error,' or some variety thereof, is not among the equitable considerations underlying judicial estoppel . . . .").

### C.     To The Extent BP Could Be Deemed To Have Made Any Inconsistent Statements, Any Inconsistency Would Have Been Inadvertent.

Finally, the district court's conclusory assertion that "BP's change of position was not inadvertent," D.E. 12055 at 18, misstates the governing legal standard and conflicts with BP's longstanding, consistent articulation of its current position to the district court. Judicial estoppel concerns whether "the party to be estopped has . . . acted inadvertently," *Oparaji*, 698 F.3d at 235, including in asserting its *earlier* position, *see, e.g., In re Coastal Plains, Inc.*, 179 F.3d 197, 206-07 (5th Cir. 1999). Thus, although BP's *present* position is deliberate, judicial estoppel cannot be applied here because BP never intentionally denied the threshold causal-nexus determination for class membership or endorsed awards to claimants with no colorable nexus to the spill. In fact, and as shown above, nothing in the record supports the notion that BP ever denied the class-membership requirement at all.

BP's repeated articulations of its present position to the district court in the weeks before final approval of the settlement preclude any suggestion that BP intentionally misled the district court. *See In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 333 (5th Cir. 2007) ("[T]he vice that judicial estoppel is designed to prevent is the 'cold manipulation' of the courts to the detriment of the public." (internal quotation marks omitted)). If BP were engaged in the sort of "intentional self-contradiction . . . as a means of obtaining unfair advantage" that is the gravamen of judicial estoppel, *In re Tex. Wyo. Drilling, Inc.*, 647 F.3d 547, 552 (5th Cir. 2011) (internal quotation marks omitted), it would not have gone out of its way, in the weeks before the final approval order, to tell the court that "the Settlement Agreement requires a connection to the spill," Emergency Motion, Ex. W (Ex. A) at 3-4.

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 26

Nor did BP have any "motive to conceal the truth to begin with." *Engines Sw., Inc.* v. *Kohler Co.*, 263 F. App'x 411, 413 (5th Cir. 2008) (citing *In re Superior Crewboats*, 374 F.3d 330, 335 (5th Cir. 2004)). At worst, then, "[t]his case looks more like a legitimate disagreement" over the meaning of BP's representations to the district court "than it does a bad faith attempt to mislead the court," *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 377 (3d Cir. 2007)—and therefore judicial estoppel cannot properly be applied here.

**III.     The District Court's Application Of Judicial Estoppel Violated The Mandate Rule.**

Beyond the reasons addressed above, the district court also erred in applying judicial estoppel here because doing so violated the mandate rule.  "The mandate rule requires that a 'district court follow both the letter and spirit of [a mandate issued by an appellate court] by taking into account the appeals court's opinion and circumstances it embraces.'"  *League of United Latin Am. Citizens* v. *City of Boerne*, 675 F.3d 433, 438 (5th Cir. 2012) (quoting *United States* v. *Carales-Villalta*, 617 F.3d 342, 344 (5th Cir. 2010)); *see also, e.g.*, *Ga. Pac. Consumer Prods., LP* v. *Von Drehle Corp.*, 710 F.3d 527, 536 n.13 (4th Cir. 2013); *United States* v. *Bell*,  988 F.2d 247, 250 (1st Cir. 1993).  The rule provides that the district court "is not free to deviate from the appellate court's mandate," but instead "should consult the reviewing court's opinion" to determine what the court of appeals intended.  *Tollett* v. *City of Kemah*, 285 F.3d 357, 364 (5th Cir. 2002) (internal quotation marks omitted).  Where the court of appeals directs that further proceedings must take place in the district court, "'the district court is limited to holding such as are directed.'"  *Crowe* v. *Smith*, 261 F.3d 558, 562 (5th Cir. 2001) (quoting *Harris* v. *Sentry Title Co.*, 806 F.2d 1278, 1279 (5th Cir. 1987)).

The district court's December 24 order violates the mandate rule because it conflicts with the letter and spirit of this Court's October 2 judgment and December 2 order.  In the October 2 decision remanding the case, Judge Southwick agreed with Judge Clement that remand was necessary and stated that the district court should "allow the parties on remand to give [the causation issue] the attention it deserves." *Deepwater Horizon*, 732 F.3d at 346 (Southwick, J., concurring); *see also id.* at 346 (opinion of Clement, J.) (instructing the district court to "expeditiously craft a narrowly-tailored injunction that allows the time necessary *for deliberate reconsideration of these significant issues on remand*" (emphasis added)).   On remand, however, the district court refused to consider BP's arguments regarding the causal-nexus issue.  Instead, on October 18—before BP had fully briefed the merits of its interpretation of the settlement's causal-nexus requirement—the district court issued an order (directing the CSSP to stay processing of certain claims but refusing to stay processing of claims lacking a causal-nexus to the spill) that summarily endorsed Class Counsel's contrary interpretation, stating in conclusory fashion that "[t]here is *no causation requirement*" for certain claimants and that the only causation requirement applicable to

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 27

other claimants is the objective revenue-based test of Exhibit 4B of the settlement agreement. Emergency Motion, Ex. B at 3. BP then moved to amend the order to correct the district court's erroneous ruling on causation, and both parties briefed the interpretive dispute. *See* Emergency Motion, Exs. O, P, S, V, X. On November 15, however, the district court refused to consider the merits of these arguments, instead summarily denying BP's motion "for the reasons previously stated" in the court's October 18 order. Emergency Motion, Ex. Y at 1. Thereafter, in a November 22 order—after BP had briefed the causal-nexus issue in its Emergency Motion to this Court—the district court belatedly took the position that BP is judicially estopped from pressing its arguments on that issue. *See* D.E. 11890 at 4-7, 10-11.

On December 2, this Court held—*after* "consider[ing] . . . the district court's orde[r] of . . . November 22" dismissing BP's arguments on judicial-estoppel grounds—that the district court's "refusal to consider causation . . . contravenes the direction in the concurring opinion to 'allow the parties on remand to give [the causation issue] the attention it deserves.'" Order at 3, Doc. 00512457612 (Dec. 2, 2013) (quoting *Deepwater Horizon*, 732 F.3d at 346 (Southwick, J., concurring)) (alteration in original). The December 2 order was issued over Judge Dennis's dissent, which adopted the views of the district court. *See id.* at 5 (Dennis, J., dissenting). With that order, any questions about judicial estoppel, waiver, or other procedural matters should have been laid to rest, and the district court should have addressed the merits of BP's causal-nexus arguments. Yet the district court again refused to consider these arguments on the merits and adhered to its previously articulated position that "judicial estoppel bars BP from advancing" them. D.E. 12055 at 12; *see id.* at 12-18.

The district court has thus repeatedly "disregard[ed] the explicit directives" of this Court. *Tollett*, 285 F.3d at 364 (internal quotation marks omitted). Rather than remand again, this Court should conclusively resolve the causal-nexus issue now, particularly since the district court has already stated its view on the merits. Emergency Motion, Ex. B at 3. This Court has refused to remand after a district court violated the mandate rule when remand would serve "no useful purpose" and the record contains sufficient evidence for this Court to reach a decision itself. *See id.* at 367 (citing *Sidag Aktiengesellschaft* v. *Smoked Foods Prods. Co.*, 960 F.2d 564, 566-67 (5th Cir. 1992)). Applying that rule in *Tollett*, this Court refused to remand after the district court "redetermine[d] the type of sanctions" to issue against the defendant, even though this Court's prior opinion had directed it to consider the *amount* of sanctions imposed. *Id.* at 365. The Court instead rendered a sanctions judgment for a newly calculated amount. *Id.* at 370.

Here, as in *Tollett*, no useful purpose would be served by an additional remand and further delay. Indeed, the case for reaching the merits now is stronger here than in *Tollett*. In contrast to *Tollett*, in this case this Court has already given the district court a second chance to follow its mandate. Moreover, the issue presented by BP's renewed motion for an

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 28

injunction is a question of law subject to *de novo* review, *see* Renewed Motion at 9, whereas in *Tollett* this Court decided an issue normally reserved for the district court's discretion, *see Tollett*, 285 F.3d at 363 ("We review for abuse of discretion the imposition of sanctions . . . ."). The causal-nexus issue is fully briefed, and this Court has already recognized the importance of having the issue resolved "expeditiously." *Deepwater Horizon*, 732 F.3d at 346 (opinion of Clement, J.); *see also* Order at 4, Doc. 00512487129 (Jan. 2, 2014) (granting BP's motion for expedited consideration of its Renewed Motion for an Injunction). Rather than allowing further delay to harm the public interest and BP, this Court should proceed to consider the merits of BP's renewed motion for an injunction.

\*     \*     \*

This Court should hold that neither judicial estoppel nor waiver applies to the causal-nexus requirement for class membership. The Court also should enforce the settlement agreement's threshold causal-nexus requirement by permanently enjoining the CSSP from issuing or paying awards to claimants that are not proper class members because their alleged injuries are not traceable to the oil spill.

**GIBSON DUNN**

Mr. Lyle W. Cayce, Clerk
January 8, 2014
Page 29

Respectfully submitted,

  /s/ Theodore B. Olson
_____

Theodore B. Olson
   *Counsel of Record*
Miguel A. Estrada
Thomas G. Hungar
Scott P. Martin
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500

George H. Brown
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA  94304
(650) 849-5300

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Wendy L. Bloom
Andrew B. Bloomer, P.C.
R. Chris Heck
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL  60654
(312) 862-2000

Jeffrey Bossert Clark
Steven A. Myers
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
(202) 879-5000

Daniel A. Cantor
Andrew T. Karron
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C.  20004
(202) 942-5000

Jeffrey Lennard
DENTONS LLP
233 South Wacker Drive
Suite 7800
Chicago, IL  60606
(312) 876-8000

S. Gene Fendler
Don K. Haycraft
R. Keith Jarrett
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA  70139
(504) 581-7979

Kevin M. Downey
F. Lane Heard III
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005
(202) 434-5000

*Counsel for Appellants*