# IN RE: DEEPWATER HORIZON LITIGATION
## MDL NO. 2179

JAMES PARKERSON ROY
Domengeaux Wright Roy & Edwards, LLC
556 Jefferson Street, Suite 500
Lafayette, LA  70501
E-Mail: jimr@wrightroy.com
Telephone: (337) 233-3033
Fax:  (337) 233-2796

STEPHEN J. HERMAN
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA  70113
E-Mail: sherman@hhklawfirm.com
Telephone: (504) 581-4892
Fax: (504) 561-6024

January 20, 2014

The Honorable Judges of the U.S. Fifth Circuit Court of Appeals
600 South Maestri Place
New Orleans, Louisiana  70130

> Re: In re: DEEPWATER HORIZON
>     Business Economic Loss Framework Appeal
>     **U.S. Fifth Cir. No. 13-30315**

May It Please the Court:

Business Economic Loss Claimants and the Economic & Property Damages Settlement Class respectfully submit this letter brief in response to the Court's Order of January 13, 2014,[1] addressing the effect of the January 10, 2014 decision in No.13-30095 and the question of whether the injunction entered by the District Court and amended on December 5, 2013 should be maintained:

In order for a business to recover economic losses under the Economic & Property Damages Settlement Agreement, the business must establish that it suffered a loss that was caused by the *Deepwater Horizon* Incident.[2]  The parties intended and agreed that this would be determined, not by an individualized and subjective evaluation, but according to objective criteria – such as geographical location, type of business, and objective revenue patterns – which could be applied on a consistent and class-wide basis.  This construct arose from a specific desire, intent and agreement of the Parties: **(i)** to avoid the types of inconsistent and arbitrary results experienced in BP's Gulf Coast Claims Facility; **(ii)** to facilitate the timely and efficient review and determination of claims by the Settlement Program; and **(iii)** with the hope (albeit not the requirement) that it would be found to satisfy the class definition, commonality, notice and other standards of Rule 23.

---

[1] Doc. 00512498781.

[2] SETTLEMENT AGREEMENT, Section 5.3.2.3 and Exhibit 4B.  (*See generally,* "Causation Is a Separate, Distinct, and Integral Requirement of the Settlement Agreement for Class Membership" OPPOSITION TO BP'S EMERGENCY MOTION FOR INJUNCTION [Doc. 00512450441], at pp.10-12.)

BP's newfound request for some additional, undefined, unspecified and presumably subjective and individualized test for causation is not only inconsistent with the clear and express terms of the Settlement Agreement, but would: **(i)** produce the types of inconsistent and arbitrary results experienced in BP's Gulf Coast Claims Facility; **(ii)** prevent the timely and efficient review and determination of claims by the Settlement Program; and **(iii)** conflict with the desire (if not requirement) under Rule 23 for an objectively ascertainable class definition. BP argues, nevertheless, that such an additional, undefined, unspecified and presumably subjective and individualized test must be read into the Settlement Agreement because it is "required" by Article III. This argument was soundly rejected by the Court in its January 10th decision, which should render moot any continuing controversy on this issue.

Moreover, the District Court, on December 24, 2013, in accordance with this Panel's October 2, 2013 decision, reconsidered the interpretation of "corresponding" in Exhibit 4C, and ordered the Claims Administrator to match variable expenses to the corresponding revenue in the Benchmark and Compensation Periods.[3]

Hence, there is no reason for the injunction entered by the District Court and amended on December 5, 2013 to remain in place.

## BP's Argument that a New, Additional, Undefined, Unspecified and Presumably Subjective and Individualized Causation Test is "Required" to be Read Into the Settlement Agreement by Rule 23 and/or Article III Was Rejected by the Court in No.13-30095 on January 10, 2014

In connection with the appeal of the District Court's final approval of the Economic & Property Damages Class Settlement under Rule 23 on December 21, 2012, the Court of Appeals Panel in No. 13-30095 considered whether "two Policy Announcements issued by the Claims Administrator" potentially "invalidate the class settlement under Article III and Rule 23." [4, 5]

The Court found that "the District Court was correct to conclude that the applicable requirements of Rule 23 are satisfied in this case. Additionally, whether or not BP's arguments regarding Exhibits 4B and 4C are correct as a matter of contract interpretation, neither class certification nor settlement approval are contrary to Article III in this case."[6]

---

[3] *See* ORDER AND REASONS (Dec. 24, 2013) [Doc. 12055], at pp.3-5.

[4] *In re: Deepwater Horizon,* U.S. Fifth Circuit Appeal No. 13-30095 (Jan. 10, 2014) [Doc. 00512496788] (hereinafter "SLIP OPINION"), at p.2.

[5] As noted, one of those Policy Announcements was considered by this Honorable Panel and, on remand, has been reversed. *See* ORDER AND REASONS (Dec. 24, 2013) [Doc. 12055], at pp.3-5. The other Policy Announcement was never actually appealed by BP to the District Court or to this Court. *See* SLIP OPINION, pp.5-7. Plaintiffs continue to respectfully submit that this Court has no jurisdiction over the matter, not only for this reason, but for all of the reasons stated in the original OPPOSITION TO BP'S EMERGENCY MOTION FOR INJUNCTION [Doc. 00512450441], at pp.5-7.

[6] SLIP OPINION, p.2.

Hence, BP's argument that, as a matter of contractual interpretation, the clear and express terms of the Class Definition and/or Exhibit 4B must be construed "in light of" alleged standing requirements under Article III in order to "salvage" Rule 23 approval of the Class Settlement must fail.

There is now a simple and unmistakable set of holdings from the Fifth Circuit. The Merits Panel has resolved the question of whether the construction of the BEL Frameworks, or any other intra-settlement disputes, must alter the normal rules of contract interpretation that would otherwise apply to a long and detailed Settlement Agreement. The Merits Panel has determined that the Settlement Agreement is final and binding, and does not violate Article III, regardless of the construction of the BEL provisions that are currently before this Panel. As Judge Davis unmistakably held for the Court, "both the named plaintiffs and the absent class members contemplated by the class definition include only persons and entities who can allege causation and injury in accordance with Article III." SLIP OPINION, p.15. Regardless of the legal test used for determining standing, the Court found "that Article III and the Rules Enabling Act are satisfied in this case." SLIP OPINION, p.18 (footnote omitted). Finally, the Merits Panel disposed of any argument that the Settlement is somehow violative of Rule 23, the principal claim raised by the Appellants in No.13-30095:

> BP has cited no authority—and we are aware of none—that would permit an evidentiary inquiry into the Article III standing of absent class members during class certification and settlement approval under Rule 23.[7]

Further, the Court held that the Rule 23 "objections of the Allpar Objectors, the Cobb Objectors, and BP have no merit." SLIP OPINION, p.25.

What remains before this Panel is to analyze the *Deepwater Horizon* Economic & Property Damages Settlement Agreement for what it is: first and foremost, a contractual agreement, which was and is intended to be enforced between BP and participating Claimants.[8] This too was the holding of the Merits Panel: "The evidentiary standard to be applied by the Claims Administrator, however, is not a matter of Article III standing. It is a question of interpreting the Settlement Agreement and applying it to each individual claim, and we are not

---

[7] SLIP OPINION, p.20.

[8] Indeed, under the terms of the agreement, the Settlement is intended to be binding as a matter of contract with participating Claimants independent of the final resolution of class approval under Rule 23. *See, e.g.,* SETTLEMENT AGREEMENT, Section 4.1 (establishment of *Deepwater Horizon* Court Supervised Settlement Program); Section 4.4 (Process for Making Claims); Section 5.12 (establishment of Settlement Trust); Section 21.2 (severability of any provisions found to be invalid, illegal or unenforceable); Section 21.3 (the Claims Administrator will continue to process claims that have been submitted to the Program in the event the class settlement is not fully and finally approved under Rule 23); Section 26.1 (regarding the binding effect of the Agreement on the Parties); Exhibit 26 (Individual Release). *See also* COMPLAINT, *BP v. Deepwater Horizon Court Supervised Settlement Program,* No.13-492 (March 15, 2013) ¶65 ("The Settlement Agreement is a valid contract meeting all required elements: offer, acceptance, and consideration"). (*See also* HERMAN DECLARATION (Nov. 11, 2013) [Doc. 11833-1], ¶¶ 5-7.)

called upon to address those issues in this appeal." SLIP OPINION, p.24. Such questions of contractual interpretation were and are reserved for this Panel.

The January 10, 2014 decision of the Merits Panel therefore reinforces the divide between the tasks of the two panels. The legal standards applicable to the Settlement Agreement under Rule 23, the Rules Enabling Act, and Article III have all been resolved as necessary and dispositive parts of the holding of the Merits Panel. Before this Panel remains only BP's challenge to the interpretation of the Settlement Agreement for certain BEL Claims. Nonetheless, a curious turn of events took place before the Merits Panel. In its eagerness to build its Article III and Rule 23 claims in spite of an evanescent record, BP decided to load up its attack on the Settlement (despite its posture as *Appellee*) with factual claims premised on the interpretation of the Settlement Agreement. As a result, the Merits Panel was obligated to make factual determinations necessary to the disposition of the legal claims advanced by BP before that Panel. To the extent that these are matters of interpretation of the Settlement Agreement that bear on issues pending before this Panel, the factual findings should be accorded preclusive effect.

Most centrally, the Merits Panel found that BP could not identify any standard based on any part of the Agreement between the parties that would isolate those claims that were caused by the *Deepwater Horizon* Incident from those claims that purportedly were not:

> ...BP makes no attempt to identify a standard that we should apply to determine whether these elements are satisfied in this case. The frequent references in BP's briefs to the "vast numbers of members who suffered no Article III injury" are disconnected from any discussion of pleading requirements, competent evidence, or the standards of proof by which the parties' contentions are evaluated during different stages of litigation.[9]

Indeed, BP "has never suggested that the Claims Administrator was incorrect to state that 'both Class Counsel and BP have … confirmed that [the Policy Announcement] is in fact a correct statement of their intent and of the terms of the Settlement Agreement." SLIP OPINION, p.6.

These findings were not *dicta* but critical to the Merits Panel's rejection of BP's argument that "Article III 'precludes certification of a settlement class that includes members that have suffered no injury' or 'who suffered no harm caused by the *Deepwater Horizon* Incident.'" SLIP OPINION, p.8.[10]

---

[9] SLIP OPINION, p.9.

[10] Plaintiffs disagree with BP's underlying contention that eligible Claimants and Class Members suffered no injury as a result of the *Deepwater Horizon* Incident. Section 5.3.2.3 and Exhibit 4B require most BEL Claimants to prove independently, according to objective criteria, that they have suffered an injury or loss traceable to the *Deepwater Horizon* Incident. While there are some Seafood, Tourism and limited other "Zone A" businesses for whom causation is presumed, those are *not* the BEL Claims that BP is complaining about; rather, BP is complaining about non-Seafood and non-Tourism "Zone C" and "Zone D" Claimants that have indisputably *satisfied* the V-Test or other objective and revenue-based causation requirements that BP agreed to in Exhibit 4B.

Thus, after analyzing the two lines of relevant caselaw, the Court concluded that:

> BP's standing argument fails under both the *Kohen* test and the *Denney* test…. Both the named plaintiffs and the absent class members contemplated by the class definition include only persons and entities who can allege causation and injury in accordance with Article III.[11]

In explaining its reasoning under the *Denney* standard, the Court further observed that:

> Using Judge Clement's formulation of the standard, the class in this case does not include any members who "concede" that they lack any "causally related injury." This ends the Article III inquiry under the *Denney* test, which does "not require that each member of a class submit evidence of personal standing" so long as every class member contemplated by the class definition "can *allege* standing."[12]

## The Court's January 10, 2014 Decision Further Confirms that there is No Evidence in the Record to Support BP's Newly Proffered Interpretation of the Settlement Agreement

The Settlement Class has now repeatedly placed before two panels of this Court evidence that the Settlement's calibrated causation requirements for different categories of Claimants satisfy all appropriate legal standards. That issue is now resolved as a matter of Circuit law.

In addition to the clear and express language of the Settlement Agreement itself, every single piece of parole evidence in the record corroborates and confirms that fact that BP intended and agreed that the Settlement Agreement would be interpreted and applied in accordance with the Claims Administrator's Policy Announcement – with which BP expressly concurred.[13]

The Court of Appeals rejected BP's newly proffered evidence in No. 13-30095, as (among other reasons) "none of this evidence was ever considered by the District Court prior to December 21, 2012."[14]

Yet, even assuming *arguendo* that this Panel were to consider such evidence, it only establishes, at most, an *opinion* offered after-the-fact by hired experts, that, in their view, "the

---

[11] SLIP OPINION, p.15.

[12] SLIP OPINION, pp.17-18 (citing *Denney v. Deutsche Bank AG,* 443 F.3d 253, 263 (2d Cir. 2006) and *Deepwater Horizon I,* 732 F.3d 326, 340-342 (5th Cir. 2013)); *see also* SLIP OPINION, p.14 ("Judge Clement also agreed with *Denney* that Article III does not require a showing that an absent class member "can *prove* his case" at the Rule 23 stage, so long as the absent class member "can *allege* standing") (emphasis in original).

[13] *See generally,* SLIP OPINION, pp.5-7; ORDER AND REASONS (Dec. 24, 2013) [Doc. 12055], at pp.6-18, 32-35, 39-43; OPPOSITION TO BP'S EMERGENCY MOTION FOR INJUNCTION [Doc. 00512450441], pp.14-27.

[14] SLIP OPINION, p.19.

Claims Administrator has awarded payments under his interpretation of Exhibits 4B and 4C to persons and entities that likely were not injured by the *Deepwater Horizon* Incident."[15]

There is no evidence in the record – as a matter of contractual interpretation – that BP ever intended or agreed that any of these claims would not be entitled to compensation if, in fact, they satisfied the objective standards and requirements of Exhibit 4B.

As noted, BP "has never suggested that the Claims Administrator was incorrect to state that 'both Class Counsel and BP have … confirmed that [the second Policy Announcement] is in fact a correct statement of their intent and of the terms of the Settlement Agreement." SLIP OPINION, p.6.

## Both the Court's January 10, 2014 Decision and the Evidence in the Record Support the Claims Administrator's – and Not BP's – Interpretation with Respect to the Class Definition under Rule 23

The Court in Appeal No. 13-30095, following this Court's decision in *In re Rodriguez,* 695 F.3d 360 (5th Cir. 2012), agreed that "'the possibility that some [claimants] may fail to prevail on their individual claims will not defeat class membership' on the basis of the ascertainability requirement."[16]

As a matter of contractual interpretation, moreover, BP's argument that an additional, unspecified, undefined, and presumably subjective and individualized standard of causation is imposed by the Class Definition actually conflicts with both the parole evidence on the issue and the desire under Rule 23 for an objectively ascertainable class definition.[17]

On May 8, 2012, BP submitted a PowerPoint presentation to the Claims Administrator to explain, among other things, how the Settlement Program would identify eligible BEL Class Members. The PowerPoint recognized:

Wide range of options to qualify for benefits:

---

[15] SLIP OPINION, p.19.

[16] SLIP OPINION, p.47 (quoting *Rodriguez,* 695 F.3d at 370).

[17] *See* SLIP OPINION, p.47 (quoting *Union Asset Management Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) ("in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable")); *see also, e.g., John v. National Sec. Fire & Cas. Co.,* 501 F.3d 443, 445 (5th Cir.2007) ("The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23") (citing *DeBrekmaeker v. Short,* 433 F.2d 733, 734 (5th Cir. 1970) and 5 MOORE'S FEDERAL PRACTICE §23.21[1], at 23-47 (Matthew Bender 3d ed. 1997) ("the class must be susceptible of precise definition. There can be no class action if the proposed class is 'amorphous' or 'imprecise'")); *see also* MANUAL FOR COMPLEX LITIGATION, FOURTH (Federal Judicial Center 2004) §21.222 ("The definition must be precise, objective and presently ascertainable").

- Businesses in industries and geographic Zones most impacted by the DWH Spill are not required to present any evidence of causation.

- All other businesses **_in the class_** have five different options to recover DWH Spill related losses….[18]

Qualifying businesses receive compensation for **_all losses regardless of actual facts and circumstances_**.

- All Zone A businesses and others with presumptions.

- _All businesses_ qualifying using _overall revenue trends_.

- All other businesses can claim specific losses of contracts or reservations….[19]

On August 13, 2012, BP submitted a Memorandum in Support of its Motion for Final Settlement Approval, in which BP stated that:

> …the class definition references geography to reduce or eliminate disputes regarding whether particular claims are included and to focus relief on those in the most affected areas of the Gulf region. _See, e.g._, Coffee Decl. (Joint Ex. C) ¶ 4 ("Also simplifying this case is the fact that the class definition carefully excludes remote claimants . . . . This deliberately narrow definition of the class . . . ensures that this class action will remain compact and that class members will be similarly situated (and hence more cohesive).")
>
> * * *
>
> …the class definition takes pains to specify a list of exclusions, for two reasons: (1) to exclude claims that BP does not believe are even colorably compensable under OPA or maritime law; and (2) to avoid the inclusion of claims that could not be efficiently resolved by a definable and administrable claims framework…. The result is a class that is neither sprawling nor under-inclusive, but instead carefully tailored to what the parties could reasonably agree on against the backdrop of the uniform body of OPA and maritime law that the Court has ruled is applicable….[20]

---

[18] BUSINESS ECONOMIC GROWTH: BENEFITS (from BP Draft Tutorial Presentation, at p.2) [Doc. 00512450442, at 3] (emphasis supplied).

[19] BUSINESS ECONOMIC GROWTH: BENEFITS (from BP Draft Tutorial Presentation, at p.3) [Doc. 00512450442, at 4] (some emphasis in original; some emphasis supplied).

[20] _See_ BP MEMO IN SUPPORT OF MOTION FOR FINAL SETTLEMENT APPROVAL (Aug. 13, 2012) [Doc 7114-1], at pp.11-12; (_see also_ pp.6-7, 29-30, 33; _see also_, EXCERPTS FROM BP'S MEMO [Doc 8963-60]; _see also_, EXCERPTS FROM DECLARATIONS SUBMITTED BY BP'S EXPERTS IN SUPPORT OF FINAL APPROVAL [Doc 8963-61]).

In conjunction with this filing, the BP Defendants also submitted the opinion of BP's expert on class certification and settlement approval, Geoffrey Miller, who confirmed that the Class Definition "clearly and objectively defines the class in terms of time period, geographic region, and type of claim."[21]

BP also jointly submitted the testimony of Professor John Coffee, who similarly confirmed that the Class Definition resulted in "a list of easily identifiable categories of … entities who are permitted to show objective losses from that disaster."[22]

Neither Professor Coffee nor Professor Miller seemed to be under the impression that businesses would also have to satisfy some subjective and as-yet-to-be-defined requirement to individually establish an "actual injury" traceable to the *Deepwater Horizon* Incident – (*beyond what is already required in Exhibit 4B*) – in order to be defined as a member of the Economic & Property Damages Settlement Class.

In the Joint Proposed Findings in Support of Final Approval of the Class Settlement submitted by BP on November 19, 2012, the Parties confirmed that the Class Definition "is objective, precise, and detailed, and does not turn on the merits."[23]  The BP Defendants went on to confirm and agree that:

> *Nothing in the class definition requires a determination on the merits or delves into any person's subjective mental state.* The definition is based on *objective criteria* such as where a person resided, worked, received an offer to work, or owned property; or *where an entity owned, operated, or leased a physical facility, or employed full time workers.*[24]

BP's current position is now just the opposite:  Rather than defining members of the class objectively – based on where an entity owned, operated or leased a physical facility – class membership would apparently be defined according to some unknown and subjective standard.

Not only would this be contrary to BP's prior statements and filings with the District Court in its initial effort to obtain settlement approval, but such an interpretation would also cause the Class Settlement Agreement to be inconsistent with the desire (if not requirement) for an objectively ascertainable class definition under Rule 23.

---

[21] MILLER DECLARATION [Doc 7114-16], p.6, ¶13, (emphasis supplied).

[22] COFFEE DECLARATION [Doc 7110-3], p.13, ¶19, (emphasis supplied).

[23] JOINT PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL APPROVAL [Doc 7945], at p.87, ¶321.

[24] JOINT PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF FINAL APPROVAL [Doc 7945], at p.87, ¶322, (emphasis supplied).

**Judge Garza's Dissent Is Focused on Tourism, Seafood and Other Limited "Zone A" Claims for which Causation is Presumed – as Contrasted with BP's Proffered "Evidence" and Argument which Are Directed at "Zone C" and "Zone D" Claims that have Satisfied the Causation Test that BP Agreed to in Exhibit 4B**

Although Judge Garza dissented from Judge Davis's opinion, the grounds have nothing to do with the issues before this Panel.

Judge Garza, in his dissent, observes that "certain individuals and entities, based on their location or the nature of their enterprise, 'are not required to provide any evidence of causation'" as they "are entitled to a presumption." SLIP OPINION, p.51 (Garza, J., dissenting). His concern, in this regard, focuses on a limited set of individual claimants with Tourism, Seafood and other "Zone A" Claims, for which BP agreed that causation would be presumed.

The causation presumptions for these categories of claimants, however, have not been disputed by BP,[25] and have nothing to do with BP's challenge before this Panel of the compensation to non-Seafood and non-Tourism "Zone C" and "Zone D" Claimants who have indisputably *satisfied* the independent revenue pattern or other causation requirements that BP agreed to in Exhibit 4B.[26]

Hence, Judge Garza's grounds for dissent have no bearing on issues before this Panel.

---

[25] Plaintiffs note that the limited Zone A, Tourism and Seafood causation presumptions, which have not been challenged by BP, are consistent with proximity/direct impact causation presumptions that have been routinely approved in mass disaster Rule 23(b)(3) class action settlements. *See, e.g., Turner v. Murphy Oil USA, Inc.,* 472 F.Supp.2d 830, 838 (E.D.La. 2007) (compensation levels in settlement of property damage/economic loss arising from oil spill based on geographic proximity; all in demarcated "Buyout Zone" entitled to repurchase or remediation of properties, and a comprehensive compensation allocation plan divided the class area into four "zones"); *Olvera v. Norfolk Southern Ry.,* 2007 U.S. Dist. LEXIS 6352 (D.S.C. 2007) (compensation and compensation levels based on class members being "physically present" in Evacuation Zone A, within 1 mile radius of derailment, or a wider radius Zone B); *In re Federal Skywalk Cases,* 97 F.R.D. 380, 391-392 (W.D. Mo. 1983) (all members of class, defined as those present in main lobby of Hyatt Regency Hotel at the time of the skywalk collapse, entitled to minimum payment of $1000; additional compensation available based on nature and severity of injuries, ranging from emotional distress to death; the settlement specified that class members could elect jury trial or arbitration to determine such claims).

[26] *See, e.g.,* APPENDIX B to Rumsey Declaration submitted by BP in Support of its Motion [Doc. 11819-2, at pp.19-48]; *see also,* APPENDIX A [Doc. 11819-2, at pp.6-18]; (*see also, e.g.,* Appendix B to BP'S MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR PRELIMINARY INJUNCTION (March 15, 2013) [Doc. 8910-3, at pp.47-71]). (***Note*** - Plaintiffs have moved the District Court to Strike the Rumsey Declaration and Appendix; *see* Doc. 11989.)

**The Merits Panel's Discussion of the Rules Enabling Act Supports BEL Claimants on the Issue of Contractual Interpretation**

Both Judge Davis and Judge Garza discuss the Rules Enabling Act, which prevents the Federal Rules from abridging or modifying substantive rights. *See* SLIP OPINION, p.18 fn.53 (quoting *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011) (under the Rules Enabling Act, "the Federal Rules of Civil Procedure cannot work as substantive law")); SLIP OPINION, p.60 (Garza, J., dissenting) (quoting 28 U.S.C. §2702(b)).

In this case, the substantive rights of eligible BEL Claimants arise, not from Rule 23, but from the Economic & Property Damages Settlement Agreement.

Of course, the Merits Panel has held that the Settlement Agreement, however interpreted, satisfies the standards and requirements of Rule 23.

Yet, as a matter of contractual interpretation, the clear, express, unambiguous and undisputed terms of the Settlement Agreement should not be abridged or modified by any proffered interpretations of, or alleged requirements under, Rule 23.[27]

**The January 10, 2014 Decision makes it Clear that BP's Argument is Impractical, Unworkable and Otherwise Erroneous on Policy Grounds**

What BP is currently suggesting is tantamount to a legal prohibition against the freedom of a defendant to settle disputed claims.

While there may be some stages in some cases where the Court will be called upon to examine the individualized evidence presented by an absent class member for the litigation and resolution of a justiciable claim,[28] it is not clear (and, in fact, the Merits Panel along with *Sullivan* and *Kohen* and other authorities have expressly rejected the notion) that such considerations are controlling in the context of a settlement class.

Nevertheless, and in any event, what is before this Honorable Panel is not a question of Article III standing, nor a question of class certification and approval under Rule 23.

Rather, what is before this Honorable Panel is a matter of contract interpretation.

---

[27] *See, e.g., Ehrheart v. Verizon Wireless,* 609 F.3d 590, 592-593 (3d Cir. 2010) ("The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements…. The requirement that a district court review and approve a class action settlement before it binds all class members does not affect the binding nature of the parties' underlying agreement").

[28] *See, e.g.,* SLIP OPINION, p.21 ("Of course, had the class in this case been certified under Rule 23 for further proceedings on the merits rather than for settlement, the district court might ultimately have had occasion to apply a stricter evidentiary standard").

To invalidate the voluntary resolution of a disputed claim (whatever the arguable merits or lack thereof) would be undesirable, as a matter of policy.

As noted by the Court in its January 10, 2014 decision, defendants are entitled to settle claims pending against them even if a court believes that those claims may be without merit. "By entering into class-wide settlements, defendants 'obtain releases from all those who might wish to assert claims, meritorious or not' and protect themselves from even those 'plaintiffs with non-viable claims who do nonetheless commence legal action.'" SLIP OPINION, p.23 (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 310 (3d Cir. 2011) (en banc)).

The Court further notes that "BP's arguments fail to explain how this court or the district court should identify or even discern the existence of 'claimants that have suffered no cognizable injury' for purposes of the standing inquiry during class certification and settlement approval." SLIP OPINION, p.9.

"Indeed, it would make no practical sense for a court to require evidence of a party's claims when the parties themselves seek settlement…. Logically, requiring absent class members to prove their claims prior to settlement under Rule 23(e) would eliminate class settlement because there would be no need to settle a claim that was already proven. Such a rule would thwart the 'overriding public interest in favor of settlement' that we have recognized 'particularly in class action suits.'" SLIP OPINION, pp.22-23.[29]

## The Merits Panel Decision Further Calls Into Question this Panel's Jurisdiction

As set forth in the original Opposition to BP's Emergency Motion for Injunction, Plaintiffs continue to respectfully question the jurisdiction of this Panel on several grounds, including the fact that BP never actually appealed the Claims Administrator's October 2012 Policy Interpretation, as well as the fact that the Settlement Agreement itself contemplates that any such disputes will be fully and finally resolved by the District Court.[30] The Merits Panel's approval of the class settlement under Rule 23 further calls this Panel's continuing jurisdiction into question.

The January 10, 2014 decision is now the law of the Circuit and the Law of the Case. The Exhibit 4C issue is before the Claims Administrator with an instruction to match expenses to revenue in accordance with this Panel's October 2, 2013 decision, and the argument regarding Exhibit 4B (to the extent it ever was before the Court) has now been rendered moot by the Merits Panel.

---

[29] *See also, In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 243-244 (2d Cir. 2012); *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 507 (5th Cir. 1981) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *Smith v. Crystian*, 91 F. App'x 952, 955 (5th Cir. 2004) (acknowledging the "strong judicial policy favoring the resolution of disputes through settlement" and affirming settlement approval).

[30] *See* OPPOSITION TO EMERGENCY MOTION FOR INJUNCTION [Doc. 00512450441] at pp.5-7.

## <u>Conclusion</u>

For the above and foregoing reasons, based on the evidence in the record, for the reasons stated by the District Court in its Order and Reasons of December 24, 2013, and for the reasons stated in the Court of Appeal's decision of January 10, 2014 in No. 13-30095, this appeal should be dismissed, and the existing injunction should be dissolved.

Respectfully submitted,

James Parkerson Roy
Stephen J. Herman
*Co-Lead Class Counsel*

Samuel Issacharoff
*Lead Appeal Counsel for the Class*